# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-KA-00979-SCT

*FREDERICK E. SCHUCK*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/17/1998 |
| TRIAL JUDGE: | HON. EDWIN C. HARDIN |
| COURT FROM WHICH APPEALED: | GEORGE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROSS PARKER SIMONS |
| | PRO SE |
| ATTORNEY FOR APPELLEE: | OFFICE OF ATTORNEY GENERAL |
| | BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | DALE HARKEY |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/04/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COBB, JUSTICE, FOR THE COURT:**

¶1.     Frederick E. Schuck (hereafter Schuck or Freddie) was indicted by the George County grand jury for the murder of Byron Beasley by deliberate design. Schuck was represented at trial by private retained counsel. The jury found him guilty of murder, and Schuck was sentenced to a term of life imprisonment in the custody of the Mississippi Department of Corrections. Aggrieved by the judgment rendered against him, Schuck has perfected an appeal to this Court through an appointed appellate public defender.

**FACTS**

¶2.     David Cooper testified that the morning of December 7, 1996, he went to Schuck's trailer, where he talked for a while with Schuck and Schuck's cousin, Byron "Chucky" Beasley (Beasley).  Later, the three of them went to Harold's liquor store, purchased a half gallon of whiskey, and then went to Cooper's house, ate lunch, and Schuck and Beasley consumed some of the liquor.  After lunch Cooper drove Schuck and Beasley back home and they "sat around there for about two hours" and talked until Beasley laid down on the bed, and Schuck appeared to be getting sleepy, so Cooper left.

¶3.     Beasley's nephew, Mitchell Davis, testified that he and a "buddy" went to Schuck's trailer to visit Beasley that afternoon.  When they arrived, Davis saw Schuck, holding a knife and pouring lighter fluid onto Beasley's clothes.  Schuck first told Davis that he (Schuck) "was fixing to burn " Beasley's clothes, but then said "no, that he wasn't that low, just load them up and take them to him."  Schuck further testified "they had got in a fight over a gallon of whiskey that he [Beasley] had hid from him," and Davis testified that Schuck said "that he was going to kill him" [Beasley] when he "come back over there."[1]  Davis took the clothes to the residence of Schuck's father, where Beasley was sleeping, and gave them to Beasley.

¶4.     A. C. Howell, who lived "on an angle, maybe 600 feet" from Schuck's trailer, testified that he heard gunshots to the left of his residence late that afternoon.  When he went outside to investigate, he saw the defendant's brother Charles Schuck (Charles) exiting the trailer of the Schucks' father, Mr. Fred, which is "right across" from Howell's house.  Charles "hollered at Freddie ... and asked him, said what are you doing you S.B.?" to which Schuck replied, "I just shot him, there he lays, call the law."  Schuck then went "back towards his trailer with what looked like a ... short barreled gun on his shoulder."  Howell saw

---

[1]No objection was made by Schuck to the testimony of Davis or Howell or Watts or Robertson (see infra) as they testified to these events of the day of the murder.

Beasley, who did not appear to be or have been armed, lying motionless about a hundred and fifty feet from Freddie's trailer.

¶5. Howell's daughter, Rhonda Watts, testified that she was visiting her parents the afternoon of the shooting when they heard two gunshots, and "saw Freddie walk across the field with a gun in his hands." Watts also heard Charles ask Schuck something to the effect of "what have you done" and Schuck replied, "I just shot Chucky, I shot the S.O.B., there he lays, if you want to go call the law, go ahead."

¶6. James Robertson, who lived approximately a hundred yards from Schuck's trailer, testified that he was outside feeding his dogs the afternoon of December 7 when he "heard Freddie and [Beasley] arguing." He then heard Beasley say, "Don't shoot me," and saw that Beasley, who was unarmed, had "turned and run." Robertson further testified that Schuck shot Beasley and "walked up there and kicked him" after he fell, then told his brother that he had "shot this M.F., call the law to come and get him." After Schuck "kicked him in the side ... and raised his shirt up to look at him," he "turned and walked back inside."

¶7. Investigator Al Hillman of the George County Sheriff's Department was dispatched to the scene at about 5:00 that afternoon. He testified that, based on his observations and conversation with other officers, he concluded that they "had a man down on the ground, and that the suspect was believed to be in the trailer residence." The sheriff called Schuck "in a loud boisterous voice . . .directly by name and identified himself as the Sheriff and asked him to come out unarmed and surrender himself ..." After repeated requests, the officers received no response. The sheriff finally warned Schuck that if he did not come out that he would break a window and mace it. Ultimately, Officer Henderson broke a window, sprayed the mace, and the officers "could hear coughing coming from inside the trailer." A few minutes

later "the inner front door, the main door, opened" and Hillman "could see that he had some kind of drink in his hand." When Schuck "took about a half step out the door," he "reached his hand out," and an officer "reached and caught him by the hand and was telling him to come on." Schuck "was still standing there"; the officer "began to pull him out"; and Schuck "went face first down the steps and landed on the ground."

¶8. Afterward, upon walking through Schuck's trailer, Hillman "saw a pump shotgun behind an easy chair next to the front door. It had a spent hull partially ejected out the ejection port. It was muzzle up, leaning against the wall." He observed ammunition in the kitchen and in the back bedroom. Many empty beer cans were "stacked very neatly in various places throughout the house," and there was "an empty whiskey bottle in the garbage can."

¶9. Investigator Gregory Box of the Mississippi Highway Patrol testified that when he arrived at the scene Schuck was handcuffed and was on the ground on the left side of the porch coming out the front door. Box performed a "gun residue kit" test on Schuck, which "came back negative because all it had on it was sand." Box's inspection of the inside of the trailer revealed no evidence of a struggle.

¶10. The officers did not attempt to question Schuck at the scene because "it was apparent he was intoxicated, very much so." The next morning, after waiving his rights, the defendant admitted that he had shot Beasley. Asked to describe his demeanor, Box testified as follows:

> [H]e wasn't as upset as I would have been if I had killed somebody. He was talking with us, made plenty of sense. He understood what was going on. He showed some remorse, and then he wouldn't show any remorse. He described it as being a terrible situation at one time I believe was the words he used ... Then at another time he said prior to the taping when we started questioning him he said that he didn't mean to kill him but he was glad that he killed him. Just his demeanor wasn't anything like mine would have been had I killed somebody and felt bad about it, or how a normal person that had killed somebody would react.

4

¶11. Dr. Stephen Timothy Hayne, accepted by the court as an expert in the field of forensic pathology, had performed the autopsy on the victim's body. Dr. Hayne testified that the victim had sustained four "injuries consistent with buckshot wounds, all of which were located over the back surface of the body." He found no entry wounds on the front of the body. The "spread of the shot" indicated "that there was a considerable distance from the end of the muzzle, the weapon, and the body when the shotgun was fired." Dr. Hayne concluded that "Mr. Beasley died from a shotgun wound in the back."

¶12. The defense presented expert opinion testimony by Dr. Daniel Koch, a clinical psychologist from Mobile, who testified that he had worked on and performed opinions in over a hundred murder cases probably "forty to fifty percent of the time" for the State. He testified at length and in great detail about the tests that he had performed in his evaluation of Schuck, as well as the other information which he considered, and explained that he spent "about eight hours" with Schuck and another six hours with records and record review." The entire evaluation was done after Schuck had been incarcerated for "some seven months." The I.Q. test which was administered by Dr. Koch, for the most part was not described as is ordinarily heard in criminal cases, but rather were described as a percentile of the population. Dr. Koch did finally say that "when we look at them overall, the left hemisphere information, the verbal information was 84, which is the lower fourteenth percentile of the population. The right hemisphere of the brain functions were nineteenth percentile. And that left him functioning at the sixteenth percentile in the population, or stated another way, eighty-four percent of people walking around would have a higher I.Q. than did this patient." When asked by Schuck's counsel what was his opinion as to the probable cause of "that deficit", he responded that Schuck's "alcohol use was extensive after 1980" and "certainly, a significant degree of his impairment would be due to his long term excessive alcohol abuse." He opined

5

that Schuck was competent to stand trial, but he did not understand the nature of his acts at the time [of the shooting] and could not distinguish between right and wrong at the time. He also testified about Schuck's "high readings on schizophrenia and paranoia based on the MMPI test," and stated that had he been evaluating Schuck at the time of the shooting, he "would have put him in a psychiatric hospital." On cross-examination, Dr. Koch agreed that "self-induced alcoholism is Schuck's problem, if any," and it was "probably the primary factor; damage to the brain from excessive alcohol use over time." Also on cross-examination there was questioning about Schuck's disciplinary actions in his military record and his records with the V. A. hospital. Koch was also questioned about an "automobile accident"in 1980, after which Schuck was in a coma for two weeks. Dr. Koch testified that Schuck's face was "smashed," and facial bones broken; then he said "it's quite likely that . . . some damage . . . will show up in the evaluation." To which the prosecutor responded by asking, "[a]re you aware, sir, that he was "drunk in the back of a moving truck and fell out?" No objection was interposed by defense counsel. Charles Schuck testified that his brother was, essentially, crazy with rage at the time in question.

¶13.    In rebuttal, the State introduced expert opinion testimony of Henry Maggio, M.D., whose experience in providing evaluations and testimony in criminal cases is extensive. Dr. Maggio testified to the details of his evaluations done approximately 11 months after the shooting, which led him to conclude: that Schuck was "manipulating the truth"; that his explanation then, of the events right after the shooting almost a year earlier (checking the victim for pulse, checking the gunshot wound, telling people to get the sheriff, etc.) was basically substantiated and corroborated by the other witnesses; and that Schuck "most certainly" knew the difference between on wrong on December 7, 1996. He found that those acts were "all purposeful acts. And what he [said was] purposeful. It's logical, it makes sense, it follows in a logical

6

fashion." He also testified that "on the day of this killing" Schuck "had a positive urine for cocaine and a blood alcohol of 435 milligrams percent....a lot of alcohol in his blood stream." But he went on to point out that Schuck continued drinking "right before he was arrested" and that he "found nothing that would dissuade me from my finding."

¶14. The jury found Schuck guilty, and he was given a life sentence in the custody of the Mississippi Department of Corrections. Aggrieved, Schuck filed this appeal through appointed counsel, who filed a brief raising four issues, and subsequently Schuck himself filed a pro-se supplemental brief raising three additional issues:

### ISSUES RAISED BY SCHUCK'S ATTORNEY

I. **WHETHER THE TRIAL COURT ERRED IN GRANTING INSTRUCTION S-1, WHICH PERMITTED CONVICTION OF SCHUCK WITHOUT REQUIRING A UNANIMOUS FINDING BY THE JURY ON THE ELEMENTS OF THE INDICTED CHARGE, AND WHICH PERMITTED THE PROSECUTOR TO USURP THE POWER OF THE GRAND JURY AND TO SEEK A CONVICTION ON A DEPRAVED HEART THEORY OF MURDER FOR WHICH MR. SCHUCK WAS NOT INDICTED. FURTHERMORE, THIS JURY INSTRUCTION PERMITTED A CONSTRUCTIVE AND SUBSTANTIVE AMENDMENT TO THE INDICTMENT BY THE PROSECUTOR.**

II. **WHETHER THE TRIAL COURT ERRED IN DENYING SCHUCK'S MOTION SEEKING TO SUPPRESS SCHUCK'S STATEMENT REGARDING HIS INVOLVEMENT IN THE SHOOTING.**

III. **WHETHER THE TRIAL COURT ERRED IN DENYING SCHUCK'S MOTION FOR A MISTRIAL MADE WHEN THE STATE IMPROPERLY ELICITED FROM WITNESSES COOPER AND MAGGIO THE BLATANTLY INCORRECT TESTIMONY THAT SCHUCK HAD BEEN DISHONORABLY DISCHARGED FROM THE U.S. NAVY AND THAT HE HAD A BAD CONDUCT RECORD WHILE IN THE SERVICE.**

**IV.** **WHETHER THE VERDICT OF MURDER WAS AGAINST THE OVERWHELMING WEIGHT AND SUFFICIENCY OF THE EVIDENCE AND THE TRIAL COURT ERRED IN DENYING SCHUCK'S MOTION FOR A DIRECTED VERDICT AND HIS MOTION FOR A NEW TRIAL.**

**ISSUES RAISED BY SCHUCK PRO SE**

**V.** **WHETHER SCHUCK WAS DENIED HIS RIGHT TO TESTIFY AS GRANTED BY ARTICLE 3, SECTION 26 OF THE MISSISSIPPI CONSTITUTION OF 1890.**

**VI.** **WHETHER THE ASSISTANT DISTRICT ATTORNEY COMMITTED PROCEDURAL MISCONDUCT IN CLOSING ARGUMENT BY BOLSTERING THE CREDENTIALS AND TESTIMONY OF STATE'S WITNESS OVER THE DEFENSE'S WITNESS.**

**VII.** **WHETHER DEFENDANT/ APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL**

¶15.    We conclude that these issues are without merit, and we affirm the trial court.

**DISCUSSION**

¶16.    **ISSUE I.**  Schuck first challenges the granting of Instruction S-1 under the plain error doctrine, even though he recognizes that it was not properly preserved in the record. S-1 reads as follows:

> The Court instructs the Jury that murder is the killing of a human being with malice aforethought, not in necessary self-defense, and without the authority of law, by any means or in any manner, when done with the premeditated and deliberate design to effect the death of the person killed.  The Court further instructs you that if you believe from the evidence in this case, beyond a reasonable doubt, that Frederick E. Schuck, on or about December 7, 1996, killed Byron E. Beasley, a human being, without authority of law, either:
>> (a) with the premeditated and deliberate design to effect the death of Byron E. Beasley with malice aforethought;
>> or
>> (b) done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any

> premeditated design to effect the death of Byron E. Beasley, and not in
> necessary self-defense;
>
> then Frederick E. Schuck is guilty of murder, and it is your sworn duty to so find.

¶17. Schuck claims the instruction's phrasing makes it impossible to determine whether the jury found him guilty of depraved heart murder, or deliberate design murder, two mutually exclusive and incompatible theories of murder. Schuck concedes that when this instruction was offered, he failed to make the proper objection necessary to preserve the issue for review, objecting on the ground that the charge did not require the jury to find beyond a reasonable doubt that the defendant "knew right from wrong at the time of the commission of the offense." The objection was overruled by the court, and the instruction was granted.

¶18. On appeal, Schuck raises for the first time that the instruction "was a flawed mingling of two distinct and compatible theories of murder" which "erase[d] the requirement for a unanimous jury" and permitted a "constructive and substantive amendment of the indictment..." The State asserts that "[a]n objection on one or more specific grounds at trial constitutes a waiver of all other grounds for objection on appeal." *Gray v. State*, 728 So. 2d 36, 60 (Miss. 1998). This Court has also held that "a party may not argue that an instruction was erroneous for a reason other than the reason assigned on objection to the instruction at trial." *Walker v. State*, 740 So. 2d 873, 887 (Miss. 1999).

¶19. Although this issue lacks substantive merit and is procedurally barred, a review on the merits shows that this Court has rejected a similar argument:

> Sanders charges error in the granting of instructions S-1 and S-2. Specifically, Sanders argues that he was charged with depraved heart murder pursuant to Miss. Code Ann. § 97-3-19(1)(b) and that the proof at trial should have been limited solely to evidence relating to that single classification of murder. Sanders argues that a deliberate design murder instruction should not have also been given. Instructions S-1 and S-2 told the jury it could find Sanders guilty of murder if he killed Watts "with the deliberate design to effect the death of Marvin Watts ..." or if he killed Watts while "engaged in the

commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, by then and there striking the said Marvin Watts in the head with a hammer...."

These two versions of murder track Miss. Code Ann. § 97-3-19, which provides in pertinent part:

(1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:

(a) When done with deliberate design to effect the death of the person killed, or of any human being;

(b) When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual.

We addressed this issue in Mallett v. State, 606 So.2d 1092, 1094 (Miss.1992), which provides:

There is no question that the structure of the statute suggests two different kinds of murder: deliberate design/premeditated murder and depraved heart murder. The structure of the statute suggests these are mutually exclusive categories of murder. Experience belies the point. As a matter of common sense, every murder done with deliberate design to effect the death of another human being is by definition done in the commission of an act imminently dangerous to others and evincing a depraved heart, regardless of human life. Our cases have for all practical purposes coalesced the two to the Section 97-3-19(1)(b) subsumes (1)(a).

We held that it was not error to grant both instructions. This view was reasserted in Hurns v. State, 616 So.2d 313, 321 (Miss.1993) and Catchings v. State, 684 So.2d 591 (Miss.1996). Our holdings in these cases are dispositive of this issue. This assignment of error is without merit.

*Sanders v. State*, 781 So. 2d 114, 118-19 (Miss. 2001). *See also Catchings v. State*, 684 So. 2d

591, 599 (Miss. 1996) (the theory of depraved heart does not amend the indictment and that subsections

(a) and (b) of section 97-3-19 (1) are "coalesced").

¶20.    In the present case, Schuck argues that the only theory of murder presented by the grand jury was

one of deliberate design murder. Schuck interjects that at no point during the pre-trial, trial or post trial

10

proceedings did the State move to amend the indictment from the grand jury to reflect the theory of depraved heart murder. Schuck's argument is that distinct and incompatible theories of murder were given in the instruction. The trial court found that the instruction incorporating both deliberate design and depraved heart murder was proper. Based on the holdings of this Court in *Sanders* and *Mallett*, we agree with the trial court and find this issue without merit.

¶21. **ISSUE II.** Schuck next argues that the trial court erred in admitting his statement which was given the morning after the shooting. Trial counsel filed a motion to suppress the inculpatory statement made by Schuck to Al Hillman of the George County Sheriff's Department and Greg Box of the Mississippi Highway Patrol on the morning of December 8, 1996. There were two separate transcripts of the statement: one made by the Highway Patrol at the direction of Box and the other made by the George County Sheriff's Department at the direction of Hillman. Both were entered into evidence at the hearing.

¶22. Schuck maintains that the alcohol, cocaine, and prescription drugs in his system rendered his waiver of the *Miranda* rights ineffective. He acknowledges that these rights may be waived, but that any waiver must be made knowingly and intelligently. Therefore he argues that any statement made during the questioning would be inadmissible. Additionally, he argues that when an interrogation is conducted without the presence of an attorney, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and right to counsel.

¶23. During the hearing on the motion to suppress Schuck's statement, the State first called Greg Box of the Criminal Investigations Bureau of the Mississippi Highway Patrol, who performed the "gunshot residue kit" test on Schuck at the scene. Box testified that when he went to Schuck's residence located on Smith Bang Road, he found Schuck, who was "extremely intoxicated," lying "on the ground by the side

11

of the front porch coming out of the trailer." Box did not question the defendant at that time "because of the condition he was in." Schuck was then transported to the George County Hospital. At about midnight, Box went to the hospital and inquired about Schuck's condition, and was told the blood alcohol level was down from .43 percent to .14. Again, "[b]ecause of his level of intoxication," Box declined to question him. Schuck was released from the hospital between 8:00 and 8:30 the next morning. Box and Investigator Al Hillman interviewed him at the George County Jail. Schuck appeared coherent and sober and was given his ***Miranda*** warnings by Hillman. Schuck waived his rights and agreed to talk to the officers. Additionally, Box testified that Schuck was not threatened, coerced or offered any reward in exchange for his statement. Box's testimony was corroborated by Hillman. The defense put on no proof at the hearing, and the trial court ultimately ruled that the statement was admissible.

¶24. "The prosecution shoulders the burden of proving beyond a reasonable doubt that the confession was voluntary." ***Horne v. State***, 825 So. 2d 627, 639 (Miss. 2002) citing ***Morgan v. State***, 681 So.2d 82,86 (Miss. 1996). This "burden is met and a prima facie case made out by testimony of an officer, or other persons having knowledge of the facts, that the confession was voluntarily made without threats, coercion, or offer of reward." ***Morgan***, 681 So.2d at 87. The circuit court sits as a fact finder when determining voluntariness of a confession, and its determination will not be reversed unless manifestly wrong. ***Id***.

¶25. This Court has held that a defendant's mental condition does not automatically render a confession inadmissible, but is one factor to consider among the totality of the circumstances of a confession. ***Holloway v. State***, 809 So.2d 598, 604 (Miss. 2000). Further, we have stated that intoxication does

not automatically render a confession involuntarily but instead the confession's admissibility depends on the degree of intoxication. *Id.*

¶26.    The testimony of the officers established a prima facie case that the statement by Schuck was made freely and voluntarily after a valid waiver of his *Miranda* rights.  Once such a prima facie case is proven by the State, the burden then shifts to the Schuck to offer evidence to rebut the State's prima facie case. *Id*.  Schuck failed to dispute said testimony made or to offer any evidence at the hearing.  The trial judge applied the correct legal standard, properly considered the totality of the circumstances, and held that Schuck's statement was free and voluntary, and thus admissible.  This issue is without merit.

¶27.    **ISSUE III.**  Schuck next asserts that the trial judge should have granted a mistrial based on the examination of State witnesses David Cooper and Dr. Maggio, regarding Schuck's military record.  Cooper was a longtime friend of both Schuck and the deceased, Chucky Beasley.  On cross-examination, defense counsel asked David Cooper about Schuck's military service, including his tour of duty in Vietnam, his medical treatment at the Veterans Administration Center in Biloxi, and his diagnosis of post traumatic stress disorder.  Thereafter, the following questioning took place:

> RE-DIRECT BY MR. SAUCIER [Assistant D.A.]:
> Q.  Mr. Cooper, do you know about the military service of Freddie Schuck?
> A.  I know what he has told me.
> Q.  Okay.  In other words, when he said he went to Vietnam, that's just what he has told you?
> A.  Right.
> Q.  Did he tell you what type of discharge he got?
> A.  Undesirable I think.
> Q.  And was that because when he went to Vietnam he only stayed a very short length of time?  Did he tell you about that?
> A.  Oh, I don't know.  We didn't discuss that.

13

Q. Did he discuss that he had been reprimanded by his officers for failing to heed their orders?

A. Yeah.

BY MR. HUNTER: We are going to object to that and ask to be heard, Your Honor.

BY THE COURT: Overruled.

BY MR. HUNTER: Can we be heard on the record?

BY THE COURT: Yes, sir.

BY MR. SAUCIER [continuing]:

Q. And the conversations that he had with you about his military service, you were aware were you not that not only did he get that discharge but he didn't like the military service?

A. No, he didn't like military service I don't think.

Q. And he didn't like authority?

A. I didn't like the military service.

¶28. Outside the presence of the jury, the defense moved the court "to instruct the jury to disregard the questions of counsel regarding any past bad acts of the Defendant which were elicited for purposes of prejudicing the case against the Defendant." Additionally, the defense moved for a mistrial on this ground. The prosecutor responded as follows:

Number one, I have never elicited intoxication by this Defendant. Counsel opposite elicited it about his own client. I never elicited anything about an altercation between the Defendant and Chucky Beasley; counsel opposite elicited that information. I never elicited information about other drinking or physical encounters; counsel opposite did. I objected when, in fact, those items were attempted by counsel opposite. Counsel opposite mentioned his military service with this individual. He mentioned his pill taking, his psychological care, the fact that he had been a Vietnam veteran. And all of that now, subject to the Court's approval, fully opens the door both ways; not just for the victim, but both ways, because counsel opposite is correct. I think in theory none of that should have been allowed until the Defendant took the stand. But, also, none of it should have been allowed against Chucky Beasley until he took the stand and established self-defense. But since he persisted on with these avenues,

14

then this is certainly and opportunity and an area where we should be able to go into.

The court agreed and overruled that motion for mistrial.

¶29.    Schuck also assigned as error, in his statement of this issue and his summary of his arguments, the testimony of the State's witness Dr. Henry Maggio regarding Schuck's military discharge. Arguing that Maggio "embellished his dishonorable discharge testimony with the assertion that Mr. Schuck had also been court-martialed" and that "[t]his information was incorrect but persistently pursued by the prosecutor." Schuck nevertheless failed to develop this second part of the issue. The record reveals that Dr. Maggio testified that "he (Schuck) was court-martialed, and he was discharged with a dishonorable discharge. And he said, no, it was an honorable discharge...." Defense counsel objected, the trial court overruled and said he could "bring it out on Cross". Defense counsel successfully showed that Dr. Maggio was in error, by having him read from Schuck's discharge records that showed "under honorable conditions". Defense counsel did not renew his objection nor did he ask for a mistrial at that point. Rather, he continued with other cross examination.

¶30.    This Court reviews a trial court's decision to deny a motion for a mistrial for abuse of discretion — that is, this Court defers to the trial court's decision and will not reverse the decision unless it was unreasonable and unduly prejudicial. *Webster v. State,* 817 So.2d 515, 521 (Miss. 2002).

¶31.    The trial judge was correct in his ruling to deny the motion for mistrial. Evidence, otherwise inadmissible, can be properly presented where the defense has "opened the door" on cross examination. *Hall v. State*, 691 So. 2d 415, 418 (Miss. 1997). The trial court has "broad discretion" to allow such

questioning on re-direct examination. *Cavett v. State*, 717 So. 2d 722, 726 (Miss. 1998). The defense questioned Cooper at length concerning Schuck's military service.

¶32.    "When 'the defense attorney inquires into a subject on cross-examination of the State's witness, the prosecutor on rebuttal is unquestionably entitled to elaborate on the matter' . . . . Because these matters were all 'brought out on cross-examination,' we find the trial court did not abuse its discretion in denying the motion for mistrial and allowing redirect examination on the matters." *Webster*, 817 So.2d at 521; *De La Beckwith v. State*, 707 So.2d 547, 591 (Miss. 1997) (citations omitted).

¶33.    Schuck has not shown an abuse of discretion by the trial court in allowing this testimony. All matters questioned on re-direct examination were matters brought out on defense's cross-examination of the witness. Therefore, this is without merit.

¶34.    **ISSUE IV.** Schuck asserts that the evidence in this case supports a conviction of heat of passion manslaughter, rather than murder, and therefore the trial court erred in denying his motion for a directed verdict and his motion for a new trial. He denounces the verdict by challenging both the weight and sufficiency of the evidence against him. The standard of review set by this Court for sufficiency of the evidence is:

> Our concern here is whether the evidence in the record is sufficient to sustain a finding adverse to [the defendant] on each element of the offense of murder. In the present context we must, with respect to each element of the offense, consider all of the evidence--not just the evidence which supports the case for the prosecution--in the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.

16

*Drake v. State*, 800 So. 2d 508, 516 (Miss. 2001) (citing *Collier v. State*, 711 So. 2d 458, 461 (Miss. 1998) (quoting *Wetz v. State*, 503 So. 2d 803, 808 (Miss. 1987) (citations omitted)).

¶35.    Likewise, in determining whether a jury verdict is against the overwhelming weight of the evidence, this Court uses the following standard:

> In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.

*Drake*, 800 So. 2d at 517 (quoting *Pleasant v. State,* 701 So.2d 799, 802 (Miss. 1997) (citations omitted)).  A less stringent rule would denigrate the constitutional power and responsibility of the jury in our criminal justice system. *Hughes v. State*, 724 So. 2d 893, 896 (Miss. 1998).

¶36.    Schuck contends that the facts show that his and Beasley's friendship disintegrated into a violent confrontation on the day of the shooting.  Schuck refers to the State's witness David Cooper who testified that about two months before the killing "Chucky hit Freddie and knocked him down", and that Freddie (Schuck) was hollering "leave me alone."  Cooper also testified that Beasley hit Schuck with an object of some type and knocked Schuck to the floor.  He further testified that Schuck had bad hips and needed both of them replaced and had difficulty getting up from a sitting position.

¶37.    Schuck argues that the "evidence in this case supports a conviction of heat of passion manslaughter, rather than murder ..."  Ordinarily, whether a homicide is murder or manslaughter is a question of fact for the jury. *Jackson v. State,* 740 So.2d 832, 834 (Miss. 1999).  The State contends that the evidence must be taken in the light most favorable to the verdict. *Jackson v. State*, 580 So.2d 1217, 1219 (Miss.

17

1991) (on appellate review the State "is entitled to the benefit of all favorable inferences that may reasonably be drawn from the evidence"), and *Noe v. State*, 616 So.2d 298, 302 (Miss. 1993) (evidence favorable to the defendant should be disregarded). The jury is the judge of the credibility of a witness. *Harris v. State*, 527 So. 2d 647, 649 (Miss. 1988). This Court "will not set aside a guilty verdict, absent other error, unless it is clearly a result of prejudice, bias or fraud, or is manifestly against the weight of credible evidence. *Drake*, 800 So.2d at 517(citing *Maiben v. State*, 405 So. 2d 87, 88 (Miss. 1981).

¶38.    As recounted above, there was ample credible testimony for the jury to find Schuck guilty of murder. This assignment of error is without merit.

¶39.    **ISSUE V-PRO SE.**   The first issue raised by Schuck in his supplemental pro se brief is that his counsel denied his constitutional right to testify because they never called him to the witness stand. We note at the outset that this alleged error is not properly before the Court, as the first time this allegation was made is in Schuck's supplemental brief. Thus it is without merit. We have on many occasions held that "[w]e must decide each case by the facts shown in the record, not assertions in the brief. *Oakwood Homes Corp. v. Randall*, 824 So. 2d 1292, 1293 (Miss. 2002) (internal citations omitted.) Consideration of matters on appeal is limited *strictly* to matters contained in the trial record. *Phillips v. State,* 421 So. 2d 476, 478 (Miss. 1982). To the appellant falls the duty of insuring that the record contains sufficient evidence to support his assignments of error on appeal. *Burney v. State*, 515 So. 2d 1154, 1160 (Miss. 1987) (quoting *Robinson v. State*, 345 So. 2d 1044, 1045 (Miss. 1977). Because Schuck's claims are unsupported by the record, they are without merit. *Id*.

18

¶40.    Schuck also contends that his conviction can not stand because the jury was not instructed that it could not infer guilt from his failure to testify.  Here, the jury was properly instructed in Instruction D-1 as follows:

> The charge is not evidence.  The Defendant is presumed to be innocent and does not have to testify or present any evidence to prove innocence.  The State has the burden of proving every element of the charge beyond a reasonable doubt.  If it fails to do so, you must return a not guilty verdict.

Because a copy of all the instructions requested at trial is in the record, it is clear that defense counsel never asked for a separate instruction, or an addition to D-1, which would say that the jury shall draw no inference of guilt from Schuck's failure to testify.  Thus this issue was not raised.  While Schuck had the right to have this type of instruction given, there is no obligation for the trial court to require it.  Failure to ask for, or the decision not to ask for, such an instruction cannot be said to be error, because it is subject to debate whether such an instruction helps or harms the defendant who does not testify.   In *De La Beckwith v. State*, 707 So. 2d at 584,  the defense requested and was granted an instruction which provided that "[t]he Court instructs the jury that the defendant has an absolute right under the law not to testify in this case, and the jury shall draw no inference whatever from Mr. Beckwith's not having done so." There we said "[w]e have reasoned that such an instruction 'probably brought to the attention of the jurors, and impressed them, the fact that [the defendant] did not testify, more than the argument of the district attorney.'" (citing *Jackson v. State*, 440 So. 2d 307, 310 (Miss. 1983)).  Thus, the decision to use such instruction, or not, can be a tactical one, and thus it certainly cannot be said that it was error for Schuck's counsel to fail to use it.  Schuck's argument on this issue is without merit.

19

¶41.    **ISSUE VI-PRO SE.**  Schuck contends that the State committed prosecutorial misconduct when it made the following statement:

> Let's go through what you heard about the defense.  Insanity.  On the testing y'all heard these experts.  We can talk about the experts.  I'm not going to get into all that.  Y'all make up your minds.  There only one thing I want to point out on these experts.  Actually, two things I want to point out on these experts.  Number one, you got a forensic psychiatrist, okay, against a psychologist.  A psychiatrist has been to med school.  He has been through an internship.  He has been through three years of study on disorders of the mind.  He has to pass a board certification.  And he gives his opinion.  A psychologist doesn't go through near that.  Okay.

¶42.    Having failed to contemporaneously object to what he contends is improper closing argument, Schuck is procedurally barred from raising this issue on appeal. *Manning v. State,* 735 So. 2d 323, 344 (Miss. 1999).  Procedural bar aside, the comments made by the State were based on the evidence, and the state's argument that the testimony of Dr. Maggio, the State's expert, should carry more weight than that of Dr. Koch, is well within the "wide latitude" granted during closing arguments concerning the weight of expert testimony. *Caston v. State*, 823 So. 2d 473, 496 (Miss. 2002).

¶43.    This issue is without merit.

¶44.    **ISSUE VII-PRO SE**.  Schuck makes a general claim that he was denied effective assistance of counsel at trial while being represented at the trial level by John Hunter and Sidney Barnett.  There is a well established standard for determining if a defendant received effective assistance of counsel.  "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

20

¶45. This Court has adopted the *Strickland* test holding:

> [This] test requires a showing that counsel's performance was sufficiently deficient to constitute prejudice to the defense. The defendant has the burden of proof on both prongs. A strong but rebuttable presumption, that counsel's performance falls within the wide range of reasonable professional assistance, exists. The defendant must show that but for his attorney's errors, there is a reasonable probability that he would have received a different result in the trial court.

*Rankin v. State,* 636 So. 2d 652, 656 (Miss. 1994) (citations omitted).

¶46. This Court must determine whether counsel's performance was both deficient and prejudicial as viewed from the totality of the circumstances. *Carney v. State*, 525 So. 2d 776, 780 (Miss. 1988). The defendant is entitled to an evidentiary hearing if he can raise facts regarding either deficiency of counsel's conduct or prejudice to the defense. *Alexander v. State,* 605 So. 2d 1170, 1173 (Miss. 1992). Only when this Court determines that defendant's counsel was constitutionally ineffective, will the remedy be to reverse and remand for a new trial. *Nicolaou v. State*, 612 So. 2d 1080, 1086 (Miss. 1992).

¶47. Schuck does not demonstrate that his lawyer's conduct was so deficient and prejudicial as to warrant a new trial. This argument is without merit.

## CONCLUSION

¶48. We conclude that there was no individual reversible error, nor was there cumulative error warranting reversal. Viewing this case as whole, Schuck was not denied a fair trial. Each of the assignments of error is without merit. The judgment of the Circuit Court of George County is affirmed.

¶49. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., WALLER, EASLEY, CARLSON AND GRAVES, JJ.,**

**CONCUR.  McRAE, P.J. AND DIAZ, J., NOT PARTICIPATING.**