898 So.2d 641 (2005)
Mitchell D. PRICE, Sr. a/k/a Lucky
v.
STATE of Mississippi.
No. 2003-KA-02311-SCT.
Supreme Court of Mississippi.
February 24, 2005.
Rehearing Denied April 21, 2005.
*645 Michael Adelman, Hattiesburg, attorney for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
Before COBB, P.J., EASLEY and GRAVES, JJ.
GRAVES, Justice, for the Court.
¶ 1. Mitchell D. Price, Sr. was convicted of three counts of statutory rape in violation of Section 97-3-65(1) of the Mississippi Code of 1972. The trial judge sentenced Price to terms of imprisonment for twenty years on count 1, ten years on count 2, and ten years on count 3, with the sentences to run consecutively. Price appeals and asserts the following errors: (1) whether he was denied his right to a speedy trial, (2) whether the evidence presented at trial was sufficient to support the conviction, (3) whether the trial court erred in granting the State's Rule 404(b) Motion, (4) whether the trial court erred in denying Price's Motion to Quash, since Counts 2, 3, and 4 of the indictment were not sufficiently specific as to date and time, and (5) whether the sentence rendered by the trial court violated Price's Eighth Amendment rights. Finding no merit to these issues, we affirm the judgment of the trial court.

FACTS AND PROCEDURAL HISTORY
¶ 2. On August 21, 2000, Mitchell D. Price, Sr., was initially arrested in Texas pursuant to a Mississippi warrant for child molestation and statutory rape. Price was extradited from Texas to Marion County, Mississippi, on December 4, 2000. After a preliminary hearing which took place on December 14, 2000, Price was released on a $30,000 bond. Pursuant to Miss.Code Ann. § 97-5-23 and § 97-3-65(1) (Rev.2000), Price was indicted by the grand jury on April 19, 2002, and charged with two counts of statutory rape and one count of child molestation. The April, 2002 indictment was subsequently nol prossed, and from the time of his initial arrest until the April, 2002 indictment, Price claims to have made on-the-record requests for an immediate trial.
¶ 3. On September 25, 2002, Price was indicted again, but this time the charges included three counts of statutory rape and one count of child molestation. He was arrested on January 8, 2003 in Texas and extradited again to Marion County on January 20, 2003. Following this arrest, Price was denied bond. As the proceedings *646 commenced against Price, the trial court found that Price was indigent and appointed counsel on his behalf. On May 30, 2003, Price's court-appointed attorney filed a Motion to Withdraw as Counsel of Record, and he was granted leave to withdraw. Price's present counsel, Michael Adelman, entered his appearance on June 18, 2003, and filed a Motion to Quash Indictment, Request for Special Venire Facias and a List, Motion to Set Bail, and Motion to Dismiss. Price's motions were heard on August 12, 2003, and the trial court granted his Motion to Dismiss as to the one count of child molestation, but denied dismissal of the three counts of statutory rape. The trial court also denied Price's Motion to Quash the Indictment. Prior to trial, the trial court granted the State's Rule 404(b) Motion seeking to introduce evidence of sexual acts allegedly performed on the victim by Price, other than those listed in the indictment. The trial court reserved ruling on the State's Rule 803 Motion seeking to introduce evidence of statements made by the victim wherein she related details of the alleged sexual incidents to third parties.
¶ 4. On September 2-3, 2003, Price was tried in the Circuit Court of Marion County on three counts of statutory rape. The State contended that Price had vaginal sexual intercourse with the female victim on three separate occasions: (i) September, 1992, (ii) December, 1992, and (iii) August, 1995. During the trial the victim testified that she was born on September 26, 1981. Thus, when these incidents allegedly took place, the victim was approximately 10, 11 and 14 years old, respectively.
¶ 5. In 1992, the victim was interviewed by a representative of the Mississippi Department of Human Services (hereinafter "D.H.S.") concerning the two 1992 incidents. During this meeting, the victim specifically told D.H.S. that Price had not touched her. The victim told the interviewer that Price had not touched her in any kind of inappropriate manner. In 1997, the victim was interviewed again by a D.H.S. representative concerning the 1995 incident. In that interview, the victim stayed with her story and informed D.H.S. that Price had not touched her inappropriately and that there had been no "bad touches."
¶ 6. During her trial testimony, the victim stated that she lied to D.H.S. both in 1992 and 1997 when interviewed about the alleged incidents because she was afraid that she would be taken to a foster if she told the truth. Further, she testified that she lied in 1997 because her mother told her that if she told the truth, it would break up her mother's marriage with Price. Afterwards, the victim's maternal grandmother testified that she notified D.H.S. after the victim told her about the incidents. The State offered testimony of Doug Barnes, an investigator with the Marion County Sheriff's Department to establish Price's age at the time these incidents took place. Other than the testimony of the victim, her grandmother, and Doug Barnes, the State offered no corroborating medical or physical evidence to support its case against Price.
¶ 7. Following the State's case, Price moved for a dismissal of the charges on the ground that the State failed to make a prima facie case. Following the denial of that motion, Price testified on his own behalf. At the close of the case, the jury returned a guilty verdict on all three counts of statutory rape. The trial judge sentenced Price to twenty years on the first statutory rape and ten years each on the two remaining statutory rape counts, with the sentences to run consecutively.

*647 DISCUSSION

I. Whether Price was denied his Sixth Amendment right to a speedy trial.
¶ 8. Price argues that the trial court denied his fundamental right to a speedy trial as guaranteed under the Sixth Amendment to the United States Constitution. The right to a speedy trial as guaranteed by the Sixth Amendment, is a "fundamental right," and is applicable to the states via the Due Process Clause of the Fourteenth Amendment. See Klopfer v. North Carolina, 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1 (1967). We also note that Article 3, Section 26 of the Mississippi Constitution of 1890 provides defendants in criminal cases with a right to a speedy trial. Mississippi has also codified speedy trial guarantees to further protect the rights of defendants. See Miss.Code Ann. § 99-17-1 (Supp.2000). Price only asserts a speedy trial violation under his Sixth Amendment rights. Therefore, this Court need not analyze this alleged violation under the Mississippi Constitution or statute.[1]
¶ 9. Review of a speedy trial claim encompasses the fact question of whether the trial delay rose from good cause. DeLoach v. State, 722 So.2d 512, 516 (Miss.1998); Mims v. State, 856 So.2d 518, 520 (Miss.Ct.App.2003). Under this Court's standard of review, this Court will uphold a decision based on substantial, credible evidence. Folk v. State, 576 So.2d 1243, 1247 (Miss.1991). If no probative evidence supports the trial court's findings of good cause, this Court will ordinarily reverse. DeLoach, 722 So.2d at 516. The State bears the burden of proving good cause for a speedy trial delay, and thus bears the risk of non-persuasion. Id. The right to a speedy trial attaches at the time of the accused's arrest, indictment, or information. Smith v. State, 550 So.2d 406, 408 (Miss.1989).
¶ 10. The United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), created a four-pronged balancing test to determine whether a defendant has been deprived of his right to a speedy trial in violation of the Constitution. The four prongs are (i) length of delay, (ii) the reason for the delay, (iii) the defendant's assertion of his right, and (iv) prejudice to the defendant. Barker, 407 U.S. at 530, 92 S.Ct. 2182. We have adopted and applied the Barker factors on numerous occasions. State v. Woodall, 801 So.2d 678, 680-81 (Miss.2001); Perry v. State, 637 So.2d 871, 874 (Miss.1994); Flores v. State, 574 So.2d 1314, 1321 (Miss.1990); Lightsey v. State, 493 So.2d 375, 378 (Miss.1986). Any delay of over eight months is presumptively prejudicial and triggers balancing of the other three factors. State v. Ferguson, 576 So.2d 1252, 1254 (Miss.1991). Once the delay is found presumptively prejudicial, "the burden shifts to the prosecution to produce evidence justifying the delay and to persuade the trier of fact of the legitimacy of these reasons." Id.
¶ 11. If this Court finds a constitutional speedy trial violation, the sole remedy is to reverse the trial court's decision and dismiss the charges. DeLoach, *648 722 So.2d at 516. No mathematical formula exists to which the Barker weighing and balancing process must be performed. Beavers v. State, 498 So.2d 788, 790 (Miss.1986). The weight to be given each factor necessarily turns on the quality of evidence available on each and, in the absence of evidence, identification of the party with the risk of non-persuasion. Beavers, 498 So.2d at 790. In the end, no one factor is dispositive. Id. The totality of the circumstances must be considered. Id. We now proceed to examine each factor.

Length of Delay
¶ 12. In evaluating a speedy trial issue arising under constitutional considerations, as opposed to Mississippi's statutory scheme, the commencement of the period begins when a person is arrested. Sharp, 786 So.2d at 380; Taylor v. State, 672 So.2d 1246, 1257 (Miss.1996).
¶ 13. The trial court correctly ruled that this factor weighs in favor of Price. Price was first arrested on August 21, 2000, in Texas and was not extradited until December 4, 2000. It is from this day (December 4, 2000) that the "time" began to run because the State did not have jurisdiction over Price until he arrived in Marion County, Mississippi. According to Woodall and Perry, Price's fundamental right to a speedy trial arose on December 4, 2000, because it was at this time actual restraints were imposed by the State against Price through an arrest and institution of criminal charges. From his extradition, December 4, 2000, until his scheduled trial date, September 2, 2003, a total of 1028 days, or approximately thirty-four months lapsed. Any delay of over eight months is presumptively prejudicial and triggers balancing of the other three factors. Ferguson, 576 So.2d at 1254. Once the delay is found presumptively prejudicial, "the burden shifts to the prosecution to produce evidence justifying the delay and to persuade the trier of fact of the legitimacy of these reasons." Id. Thus, under Ferguson and Barker Price's delay of nearly thirty-four months was presumptively prejudicial and shifts the burden to the State. The trial court found and the record reflects no evidence produced by the State to justify this delay or to persuade the trier of fact of the legitimacy of same.

Reason for Delay
¶ 14. The trial court also found that of the thirty-four months which lapsed between Price's extradition of December 4, 2000, until his scheduled trial date of September 2, 2003, approximately twenty months weighed against the State. From December 4, 2000 to September 28, 2001 (when the May 2001 grand jury was dissolved), a span of 298 days, or roughly ten months lapsed and weighed against the State. From September 29, 2001 to April 18, 2002 (the day before Price was indicted by the October 2001 grand jury), a span of 202 days, or roughly 6.5 months lapsed and weighed against the State. From April 19, 2002 (when Price was indicted by the October 2001 grand jury) to July 1, 2002 when his indictment was nol prossed by the State, a span of eighty-one days lapsed and weighed against the State. From July 2, 2002, to September 24, 2002, the day before Price was re-indicted, a span of eighty-four days lapsed, but the trial court found that it weighed against neither party in that Price was not under formal prosecution during this time.
¶ 15. The trial court also found that from Price's September 25, 2002 indictment to his scheduled trial date (September 2, 2003), a span of 342 days lapsed. The trial court ruled that of this 342-day period, 112 days weighed against Price, while the remaining 230 days weighed *649 against the State. Summarily, the trial court found that this factor weighed in favor of Price. After reviewing the above times and dates, we hold that the trial court was correct in its assessment that the second prong of Barker weighs in favor of Price.

Price's Assertion of his Right to a Speedy Trial
¶ 16. The trial court ruled that Price had not affirmatively asserted his right to a speedy trial and, therefore, weighed this factor in favor of the State. "A defendant has no duty to bring himself to trial. . . . Still he gains far more points under this prong . . . . when he has demanded a speedy trial." Jefferson v. State, 818 So.2d 1099, 1107-08 (Miss.2002)(quoting Brengettcy v. State, 794 So.2d 987, 994 (Miss.2001)). The trial court relied upon Jefferson for guidance and ruled that because Price filed a motion to dismiss for lack of a speedy trial and not a motion for a speedy trial, he did not properly assert his constitutional right. The trial court also concluded that at no time prior to Price's motion to dismiss had he affirmatively asserted his right to a speedy trial. From the time of Price's initial extradition from Texas to Mississippi in December 2000 through the return of the first indictment in April 2002, Price was represented by his current counsel Michael Adelman. Price contends that when he was indicted and arrested in April 2002, both he and counsel took the position that Price wanted an immediate trial at the next term of the Marion County Circuit Court which would have been in July 2002. However, because the April 2002 indictment was nol prossed on July 1, 2002, it is not part of the record before this Court.
¶ 17. In finding that the assertion of a speedy trial right weighed against Price, the trial court correctly relied upon Price's "Acknowledgment by Defendant of Right to be Arraigned" and "Order Continuing and Pre-Setting Trial" on May 13, 2003. The trial court noted that on May 13, 2003, Price freely, knowingly and voluntarily waived his right to a speedy trial and his right to be arraigned. Price argues just the opposite. Price considers the raw span of time that elapsed as justifiable grounds for a dismissal. While more than 600 days is presumptively prejudicial in light of controlling case law, both this Court and the Court of Appeals have refused to dismiss indictments in cases where much more time has elapsed. See Beckwith v. State, 707 So.2d 547 (Miss.1997); Moody v. State, 838 So.2d 324 (Miss.Ct.App.2002). Considering the entire record from a totality of the circumstances, we find no evidence that Price ever affirmatively asserted his right to a speedy trial prior to filing his motion to dismiss. Further, we note that Price waived his right to a speedy trial through his own motion for continuance and pre-setting trial. Because of this, the trial court was correct in weighing this factor in favor of the State.

Prejudice to Price
¶ 18. The trial court ruled that even with a thirty-four month delay, Price suffered no actual prejudice and thus weighed this factor in favor of the State. Price contends that contrary to the trial court's findings, he did in fact suffer actual prejudice, including: (i) oppressive pre-trial incarceration; (ii) anxiety and concern, and (iii) additional charges. While this Court has noted the importance of the prejudice factor and has attempted to protect against the type of problems listed by Barker, we have remained reluctant to uphold dismissal of charges on speedy trial grounds where the defendant suffered no actual prejudice. State v. Magnusen, 646 So.2d 1275, 1284 (Miss.1994). In considering *650 the prejudice factor, we consider three interests: (i) prevention of oppressive pretrial incarceration; (ii) minimization of anxiety and concern of the accused; and (iii) limiting the possibility that the defense will be impaired. Id. at 1284 (quoting Barker, 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118). Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. Id. In Magnusen, this Court found presumptive prejudice from a fifteen-month delay between arrest and trial but no actual prejudice and weighed the "prejudice" factor against the defendant. Id. at 1284. Magnusen offered no proof of extraordinary anxiety or of loss of evidence or witnesses, and this Court declined to "infer prejudice to the defense out of the `clear blue.'" Id. We hold that the trial court correctly followed the logic of Magnusen, in weighing the prejudice factor in favor of the State. The trial court found and the record bears no proof of extraordinary anxiety or loss of evidence or witnesses by Price to demonstrate actual prejudice. Thus, given the totality of the circumstances, the trial court was correct in ruling the prejudice factor weighed against Price.

The Barker Factors Considered Together
¶ 19. Considering the record as a whole and under a totality of the circumstances in the case at bar, we conclude that the trial court was correct in deciding that the first and second factors under Barker weighed in favor of Price and concluding that the third and fourth factors weighed in favor of the State. Considering the third factor, the record reveals that Price waived his right to a speedy trial through his own motion for continuance and pre-setting trial. Thus, the third factor clearly favors the State. Considering the fourth factor, the trial court correctly concluded that the record bears no evidence of actual prejudice to Price. Upon a fair balancing of the Barker factors in light of Mississippi's current case law on the point, we uphold the trial court's balancing of the Barker factors as well as the ruling that Price was not denied his constitutional right to a speedy trial.

II. Whether the evidence supported Price's conviction.

A. Sufficiency of the Evidence
¶ 20. In addition to his speedy trial violation, Price complains that the evidence offered by the State does not support a conviction of statutory rape. At the close of the State's case, Price moved for a directed verdict on the ground that the State failed to establish a prima facie case. The trial court denied the defendant's motion. Price renewed his motion at the conclusion of all the evidence on the grounds of insufficient evidence. Following the jury's verdict, Price moved for a Judgment of Acquittal Notwithstanding the Verdict or, in the Alternative, a New Trial, to wit, the trial court denied. To this end, Price asserts that the evidence offered by the State was insufficient to support a finding of guilt, and the jury's verdict is against the overwhelming weight of the evidence.
¶ 21. On this issue, our concern is whether the evidence in the record is sufficient to sustain a finding adverse to the defendant on each element of the criminal offense. Wetz v. State, 503 So.2d 803, 808 (Miss.1987). In the present context, this Court must, with respect to each element of the offense, consider all of the evidence  not just the evidence which supports the case for the prosecution  in the light most favorable to the verdict. Wetz, 503 So.2d at 808. The credible evidence *651 which is consistent with guilt must be accepted as true. Id. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Id. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. Id. If the evidence is found to be legally insufficient, then discharge of the defendant is the proper remedy. May v. State, 460 So.2d 778, 781 (Miss.1985).
¶ 22. Price contends that when this Court considers all the evidence in a light most favorable to the State and the jury's verdict, we will find that the evidence offered was insufficient to sustain a judgment adverse to him. The specific statute listed in the indictment defines "statutory rape" as occurring whenever a "person of any age has sexual intercourse with a child who: (i) is under the age of fourteen (14) years; (ii) is twenty-four (24) months younger than the person; and (iii) is not the person's spouse." Miss.Code. Ann. § 97-3-65(1)(b) (Rev.2000). "Sexual intercourse" is defined as "a joining of the sexual organs of a male and female human being in which the penis of the male is inserted into the vagina of the female." Miss.Code Ann. § 97-3-65(5) (Rev.2000). During trial the victim established that during these alleged incidents, she was less than fourteen years old. Further, she testified that on three different occasions (while she was under the age of fourteen), Price inserted his penis inside her vagina. Outside of this testimony, the State offered no corroborating physical or medical evidence to buttress its case.
¶ 23. Price argues that he was convicted on the uncorroborated testimony of the alleged victim, and this alone is insufficient to support the conviction. However, the unsubstantiated and uncorroborated testimony of a victim is sufficient to support a guilty verdict if that testimony is not discredited or contradicted by other credible evidence, especially if the conduct of the victim is consistent with conduct of one who has been victimized by a sex crime. Collier v. State, 711 So.2d 458, 462 (Miss.1998); McKinney v. State, 521 So.2d 898, 899 (Miss.1988); Christian v. State, 456 So.2d 729, 734 (Miss.1984); Otis v. State, 418 So.2d 65, 66 (Miss.1982); Taylor v. State, 836 So.2d 774, 777 (Miss.Ct.App.2002). Price contends that the victim contradicted her trial testimony when she admittedly lied to D.H.S. representatives in 1992 and 1997 concerning these alleged incidents. When confronted with these contradictions between her trial testimony and her statements made to D.H.S., the victim testified that in 1992 she lied because she was afraid that she would be taken to a foster home if she told the truth. Also, the victim testified that in 1997, she lied to D.H.S., because her mother told her that if she told the truth, it would destroy her marriage to Price. Price concedes that the victim's testimony is uncorroborated and on its own would be sufficient to support a guilty verdict. However, Price argues that her testimony is severely discredited and contradicted by her own statements made during the 1992 and 1997 interviews with D.H.S. Price concedes that he and the victim had a tumultuous relationship as stepfather and stepdaughter, but such a relationship does not give rise to statutory rape. In its brief, the State offers the victim's statements in 1992 and 1997 are consistent with the actions of a child who is being abused in a home or family setting. The State also offered the testimony of the victim's maternal grandmother to establish that the victim brought to her attention the incidents involving Price and that she reported same to D.H.S.
¶ 24. Further, Price argues that his own testimony contradicted and discounted *652 the victim's testimony. During his direct testimony, Price denied having sexual intercourse with the victim at any time. Also, Price contends that the victim's unsupported word should be discounted since the State offered no evidence to establish that her post-rape conduct was consistent with of one who has been victimized.
¶ 25. Essentially, Price makes this argument out to be one of credibility. We have routinely held that the jury is the judge of the credibility of a witness. Schuck v. State, 865 So.2d 1111, 1119-20 (Miss.2003) (citing Harris v. State, 527 So.2d 647, 649 (Miss.1988)). This Court "will not set aside a guilty verdict, absent other error, unless it is clearly a result of prejudice, bias or fraud, or is manifestly against the weight of credible evidence." Drake v. State, 800 So.2d 508, 517 (Miss.2001)(citing Maiben v. State, 405 So.2d 87, 88 (Miss.1981)). Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. Schuck, 865 So.2d at 1123; Drake, 800 So.2d at 516. This Court may reverse and render a guilty verdict only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fairminded jurors could only find the accused not guilty. Id. The State established the ages of the victim and the defendant as required by § 97-3-65(1)(b) through the testimony of the victim and defendant. The State established through the victim's testimony that Price inserted his penis into her vagina as required by § 97-3-65(5). We have consistently held that the unsubstantiated and uncorroborated testimony of a victim is sufficient to support a guilty verdict if that testimony is not discredited or contradicted by other credible evidence, especially if the conduct of the victim is consistent with conduct of one who has been victimized by a sex crime. Collier, 711 So.2d at 462. This issue clearly boils down to credibility. The jury, having the benefit of observing the demeanor and expressions of the witnesses, found that the victim's testimony was more credible than Price's. Thus, in reviewing this record and briefs in this case, we hold that the jury's verdict was supported by legally sufficient evidence.

B. Weight of the Evidence
¶ 26. Price argues that the verdict is against the weight of the evidence presented in this case. The standard of review for the determination of whether a jury verdict is against the overwhelming weight of the evidence is that this Court must "accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." Collier v. State, 711 So.2d 458, 461 (Miss.1998)(citing Herring v. State, 691 So.2d 948, 957 (Miss.1997)). A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction "unconscionable injustice." Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). As such, if the verdict is against the overwhelming weight of the evidence, then a new trial is proper. May, 460 So.2d at 781-82.
¶ 27. We adopt the above rationale for this assignment of err as well. In reviewing the entire record, we hold that the trial court did not abuse its discretion in denying Price's Motion for a Judgment of Acquittal Notwithstanding the Verdict or, in the Alternative, a New Trial because the verdict was not against the overwhelming weight of the evidence. May, 460 So.2d at 781-82. A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction *653 "unconscionable injustice." Groseclose v. State, 440 So.2d at 300. We hold that the verdict reached by the jury is consistent with the weight of the evidence presented by the State in the instant action.

III. Whether the trial court erred in granting the Prosecution's Rule 404(b) Motion.
¶ 28. Prior to trial, the trial court dismissed Count 1 of the original indictment which charged Price with child molestation. Price contends that the trial court erred in granting the Prosecution's Rule 404(b) Motion, which essentially allowed the victim to testify regarding the various allegations contained in Count 1 of the original indictment. Price's argument on this issue is two fold. First, Price contends that by granting the State's 404(b) Motion, the trial court allowed the State to achieve indirectly, what the rules prohibit directly  use of other crimes to infer guilt as to the offense charged. Second, Price argues that while the admissibility of prior crimes, wrongs, and other acts must satisfy the Rule 404(b) analysis, a separate analysis under Rule 403 is likewise required.
¶ 29. Rule 404(b) of the Mississippi Rules of Evidence states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. . . ." M.R.E. 404(b). "Relevancy and admissibility of evidence are largely within the discretion of the trial court, and reversal may be had only where that discretion has been abused." White v. State, 742 So.2d 1126, 1134 (Miss.1999). "Furthermore, the trial court's discretion must be exercised within the scope of the Mississippi Rules of Evidence, and reversal will be appropriate only when an abuse of discretion resulting in prejudice to the accused occurs." Id. at 1134. "A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse this ruling." Walker v. State, 878 So.2d 913, 915 (Miss.2004) (quoting Jefferson v. State, 818 So.2d 1099, 1104 (Miss.2002)).
¶ 30. In the case at bar, the victim testified that her sexual relationship with Price began with fondling of her private parts both outside and inside of her clothing and expanded to sexual intercourse. Price argues that by allowing the State to introduce evidence of the prior acts of fondling under Rule 404(b), an impermissible inference of guilt flowed to the charges of statutory rape. In light of recent case law, this assignment of error is without merit. Proof of another crime or act is allowed when it is so interrelated to the charged crime that it constitutes either a single transaction or occurrence or a closely related series of transactions or occurrences. Brown v. State, 890 So.2d 901 (Miss.2004) (citing Duplantis v. State, 644 So.2d 1235, 1246 (Miss.1994)). Proof of another crime or act is admissible where necessary to identify the defendant, to prove motive, or to prove state of mind. Id. Evidence of other bad acts is admissible in order to tell a complete story to avoid confusion among jurors. Id. (citing Simmons v. State, 805 So.2d 452, 481 (Miss.2001)). Considering the facts here, we hold that the evidence of fondling was necessary to show the defendant's state of mind and/or motive at the time these alleged rapes took place. Further, the victim's testimony as to the fondling was necessary so as to complete a story for the jury as to the events leading up to the alleged rapes. Thus, it follows that the trial court did not abuse its discretion in granting the State's Rule 404(b) motion.
*654 ¶ 31. Secondly, Price argues that the admissibility of prior crimes, wrongs, and other acts must satisfy the Rule 404(b) analysis, a separate analysis under Rule 403 is likewise required. In Lindsey v. State, 754 So.2d 506, 511-13 (Miss.Ct.App.1999), the Court of Appeals ruled that a trial court did not abuse its discretion in admitting testimony that a defendant charged with murder stole a gun and an automobile prior to the commission of the murder, even assuming the trial judge failed to balance whether the prejudicial effect outweighed its probative value under Rule 403. The Court of Appeals reasoned that because the testimony was evidence of plan and preparation and aided in telling a complete story, the prejudicial effect, if any, was minimal. Lindsey, 754 So.2d at 514. Today, we adopt the rationale of Lindsey and hold that the trial court did not abuse its discretion in failing to conduct a Rule 403 analysis of the evidence that Price fondled the victim because the prejudicial effect, if any, was minimal.

IV. Whether the trial court erred in denying Price's Motion to Quash, since Counts 2, 3, and 4 of the indictment were not sufficiently specific as to date and time.
¶ 32. Price argues that Counts 2, 3, and 4 of the indictment were not sufficiently specific as to date and time; and therefore, he contends the trial court should have granted his Motion to Quash the Indictment. The State argues that the indictment was sufficiently specific as to apprise Price of the nature and quality of the allegations before him. In light of U.R.C.C.C. 7.06(5), this assignment of error is also without merit. "The date and, if applicable, the time at which the offense was alleged to have been committed. Failure to state the correct date shall not render the indictment insufficient." U.R.C.C.C. Rule 7.06(5). In Ousley v. State, 154 Miss. 451, 122 So. 731, 732 (1929), this Court held:
It is not essential, in an indictment for a statutory crime, that the exact descriptive language of the statute be used. Equivalent words of substantially the same meaning as those of the statute may be substituted. Where the language used in the indictment is sufficiently specific to give notice of the act made unlawful, and exclusive enough to prevents its application to other acts, it is sufficient.
Id. This Court in Westmoreland v. State, 246 So.2d 487, 489 (Miss.1971), stated the purpose of an indictment as the "pleading in the criminal case" is:
To apprise the defendant of the charge(s) against him in fair and intelligible language (i) in order that he may be able to prepare his defense, and (ii) the charge(s) must be laid with sufficient particularity of detail that it may form the basis of a plea of former jeopardy in any subsequent proceeding.
Id. As to Counts 2, 3, and 4, the indictment contains the following:

COUNT TWO
During the month of September, 1992, said Defendant, Mitchell Price, Sr., being then and there a male person above the age of eighteen (18) years, to-wit: twenty-eight (28) years of age, whose date of birth of May 14, 1964, did carnally and unlawfully know by having sexual intercourse with [the victim], a female child who was under the age of fourteen (14) years, to-wit: ten (10) years of age at the time, whose date of birth is September 26, 1981, by the insertion of his penis into the vagina of [the victim], contrary to and in violation of Section 97-3-65(1) of the Mississippi Code of *655 1972, as amended; against the peace and dignity of the State of Mississippi, and

COUNT THREE
Between the 15th day of December, A.D., 1992 and the 25th day of December, A.D., 1992, said Defendant, Mitchell Price, Sr., being then and there a male person above the age of eighteen (18) years, to-wit: twenty-eight (28) years of age, whose date of birth of May 14, 1964, did carnally and unlawfully know by having sexual intercourse with [the victim], a female child who was under the age of fourteen (14) years, to-wit: eleven (11) years of age at the time, whose date of birth is September 26, 1981, by the insertion of his penis into the vagina of [the victim], contrary to and in violation of Section 97-3-65(1) of the Mississippi Code of 1972, as amended; against the peace and dignity of the State of Mississippi, and

COUNT FOUR
During the month of August, 1995, said Defendant, Mitchell Price, Sr., being then and there a male person above the age of eighteen (18) years, to-wit: twenty-eight (28) years of age, whose date of birth of May 14, 1964, did carnally and unlawfully know by having sexual intercourse with [the victim], a female child who was under the age of fourteen (14) years, to-wit: thirteen (13) years of age at the time, whose date of birth is September 26, 1981, by the insertion of his penis into the vagina of [the victim], contrary to and in violation of Section 97-3-65(1) of the Mississippi Code of 1972, as amended; against the peace and dignity of the State of Mississippi.
In Morris v. State, 595 So.2d 840, 841 (Miss.1991), the defendant was indicted for molesting a fifteen-year-old girl. The indictment alleged that the molestation occurred between the months of March and May of 1986. Morris, 595 So.2d at 841. Morris argued that more specific dates should be given so that he could prepare an alibi defense and requested same. Id. This Court held that a defendant should be given the specific date if at all possible, but the Court noted under Mississippi Criminal Procedure Rule 2.05 (currently U.R.C.C.C. 7.06(5)), failure to provide the correct date does not render the indictment defective. Id. Thus, it follows that there was no error because Counts 2, 3, and 4 of the indictment were sufficiently specific as to apprise the defendant of the charges against him.

V. Whether Price's sentence violated his Eighth Amendment rights.
¶ 33. Price contends that his sentence of twenty years on count 1, ten years on counts 2, and ten years on count 3, with each sentence running consecutively for a total sentence of forty years violates his Eighth Amendment rights. Miss.Code Ann. § 97-3-65(2)(c) establishes the sentencing range for a person eighteen years or older who is convicted of statutory rape. The statute provides a minimum penalty of twenty years' imprisonment and a maximum penalty of life imprisonment. Id. Price's sentence of twenty years on Count 1, ten years on Count 2, and ten years on Count 3 was well within the sentencing range established by statute. Sentencing that is within the limits prescribed by statute is within the complete discretion of the trial court and is not subject to appellate review. Nichols v. State, 826 So.2d 1288, 1290 (Miss.2002). Therefore, this assignment of error is without merit.

CONCLUSION
¶ 34. For these reasons, we affirm the judgment of the Marion County Circuit Court.
*656 ¶ 35. COUNT I: CONVICTION OF STATUTORY RAPE AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH SAID SENTENCE TO BEGIN 9/26/2003 AND TO RUN FOR TWENTY (20) YEARS FROM AND AFTER SAID DATE, AFFIRMED.
COUNT II: CONVICTION OF STATUTORY RAPE AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.
COUNT III: CONVICTION OF STATUTORY RAPE AND SENTENCE OF TEN (10)YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SAID SENTENCES SHALL RUN CONSECUTIVELY FOR A TOTAL OF FORTY (40) YEARS.
SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. COBB, P.J., CONCURS IN RESULT ONLY. DIAZ, J., NOT PARTICIPATING.
NOTES
[1] In evaluating speedy trial issues arising under general constitutional considerations, as opposed to Mississippi's speedy trial statute (Miss.Code Ann. § 99-17-1 (Rev.2000), commencement of period begins when a person is "accused," which can be arrest, indictment, or any formal charge, whichever is first to occur. Sharp v. State, 786 So.2d 372, 380 (Miss.2001). See Doggett v. United States, 505 U.S. 647, 654-55, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992)). However, under statutory analysis, the key date for assessment of speedy trial violations is the date of arraignment. Sharp, 786 So.2d at 380.