944 So.2d 86 (2006)
Willie ADAMS a/k/a Scrap Iron, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-01486-COA.
Court of Appeals of Mississippi.
May 9, 2006.
Rehearing Denied August 29, 2006.
Certiorari Dismissed December 14, 2006.
*87 Pamela A. Ferrington, Natchez, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before MYERS, P.J., CHANDLER and GRIFFIS, JJ.
GRIFFIS, J., for the Court.
¶ 1. Willie Adams was convicted of manslaughter and sentenced to serve twenty years in the custody of the Mississippi Department of Corrections. On appeal, Adams claims that the trial judge erred by failing to suppress Adams' statements and in denying Adams' motion for change of venue. We find no error and affirm.

FACTS
¶ 2. On the night of August 8, 2003, Willie Adams and several friends were sitting in the parking lot of the car wash that Adams owned in Fayette. They were drinking and hanging out. Meisha McGee and another man drove up. A dispute arose over repairs to McGee's vehicle. Adams was eventually hit over the head with a beer bottle.
¶ 3. Adams went to his vehicle to retrieve his gun, but did not find it. He turned around, and Timothy Lee was waving a gun in McGee's face arguing with him. Adams tried to take the gun from Lee, and they wrestled over it. The gun discharged two or three times. Two of the shots struck McGee in the neck, killing him. When the shooting stopped, Adams had possession of the gun.
¶ 4. Adams went to the Fayette Police Department and spoke to Officer Shawn King. Adams told King that a shooting had just taken place at his car wash and that he thought someone was dead. Adams turned the gun over to Officer King.
¶ 5. Adams testified that a police officer carried him to the parking lot of the emergency room and dropped him off. Adams was not able to enter the emergency room because the door was locked, and the orderly would not let him in. Adams then said that, while he was in the parking lot of the emergency room, a car drove by and the passengers yelled to him. Adams stated that he was afraid, so he ran back to the Fayette Police Department. However, no one was there. Adams then ran to the nursing home, which is attached to the emergency room. Adams asked for his sister who worked at the nursing home. She was not on duty. Another nurse called Adams' wife and asked her to come and pick him up.
¶ 6. Adams' wife then drove Adams to the police department. No one was there so they went to the Jefferson County Sheriff's Office. A deputy then carried Adams back to the Fayette Police Department where he gave two statements: first to Deputy Donald Sampson, and later to Bud Williams, Fayette Chief of Police, and Peter Walker, Jefferson County Sheriff. Later in the day, Adams asked to speak with Sheriff Walker and gave another statement, which was recorded, about the shooting.
¶ 7. Adams was indicted and charged with murder, in violation of Mississippi Code Annotated Section 97-3-19 (Rev. 2000). Adams was found guilty of the lesser offense of manslaughter.

ANALYSIS
I. Did the trial court erred by failing to suppress Adams' statements?
¶ 8. The standard of review for a trial judge's decision to admit or exclude evidence is abuse of discretion. Graves v. State, 492 So.2d 562, 565 (Miss.1986). Adams' motion to suppress argued that *88 Adams' statements were obtained through coercion and, therefore, were involuntary. After an evidentiary hearing, the trial judge found that the statements were admissible.
¶ 9. Adams gave four separate statements to law enforcement officers.
¶ 10. First, Adams went directly to the police department. He told Officer King that he "shot some dude," and he "thought he was dead." This statement was given after Adams voluntarily presented himself to the police. Adams was not in custody at the time he gave the statement. Furthermore, Adams did not object to the admission of this first statement at the suppression hearing. Instead, Adams' counsel indicated that he may raise an objection at trial. No objection was offered during the trial.
¶ 11. Adams gave the second statement to Investigator Donald Sampson of the Fayette Police Department. Before giving the statement, Adams was read his Miranda rights and signed a waiver of these rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The waiver was witnessed by Investigator Sampson, and it indicates that the statement was given at 1:10 a.m. on August 9, 2003. Franchessea Adams, Adams' wife, wrote out the statement and signed at the bottom of the second page along with Adams. Investigator Sampson signed as a witness.
¶ 12. The third statement was given to Bud Williams, Fayette Chief of Police. This statement was given after Adams was again read his Miranda rights. Adams signed a second waiver at 2:25 a.m. This waiver was witnessed by Sheriff Peter Walker. This statement was memorialized by Chief Williams on a narrative form.
¶ 13. The fourth statement was given while Adams was in custody. He asked to speak to Sheriff Walker. At 1:25 p.m. on August 9, 2003, Adams signed a third waiver of his Miranda rights, and Sheriff Walker recorded Adams' statement.
¶ 14. Adams argues that the three statements that he gave, while in police custody, were in an effort to obtain medical attention. Adams claims that he was told that he could not be treated until he gave a statement. His testimony during the suppression hearing contradicts this claim. Adams testified, on direct examination:
Mr. Taylor: Okay. Did you feel like you needed to have medical treatment then?
Mr. Adams: I know I did.
Mr. Taylor: Is that why you were providing statements?
Mr. Adams: Is that why 
Mr. Taylor: Is that why you're providing statements?
Mr. Adams: No. Because like Sheriff Walker said, I had called and requested to talk to him, because  you know, I needed somebody to talk to. At that point in time I did.
Mr. Taylor: Did you feel that by giving this statement it would get you medical attention faster?
Mr. Adams: Not just really.
¶ 15. A statement by the accused is admissible if the accused was given the Miranda warnings, and then knowingly, intelligently and voluntarily waived the rights. Busick v. State, 906 So.2d 846, 855 (¶ 16) (Miss.Ct.App.2005) (citing Moore v. State, 493 So.2d 1301, 1303 (Miss.1986)). Whether there was an intelligent, knowing and voluntary waiver must be determined from the totality of the circumstances. McGowan v. State, 706 So.2d 231, 235 (¶ 12) (Miss.1997). The testimony presented at the suppression hearing supports the admission of Adams' statements.
*89 ¶ 16. Adams waived his rights, in writing, on three separate occasions. He even testified that he did not think that giving the statement would get him medical attention any faster. We find that the trial judge did not abuse his discretion in admitting the statements and find this assignment of error to be without merit.
II. Whether the trial court erred in denying the motion for change of venue?
¶ 17. The standard of review for the trial judge's decision to deny a motion for change of venue is abuse of discretion. Grayson v. State, 806 So.2d 241, 250 (¶ 20) (Miss.2002). Granting of a change of venue is a matter so largely in the sound discretion of the trial court that a judgment of conviction will not be reversed on appeal on the ground that a change of venue was refused, unless it clearly appears that the trial court abused its discretion. Gray v. State, 728 So.2d 36, 65 (¶ 143) (Miss.1998).
¶ 18. Adams argued that the basis for the motion for change of venue was extensive pretrial publicity and because the twin sibling of the victim is a deputy circuit clerk. Mississippi Code Annotated Section 99-15-35 (Rev.2000) provides the requirements for a change of venue:
On satisfactory showing, in writing, sworn to by the prisoner, made to the court, or to the judge thereof in vacation, supported by the affidavits of two or more credible persons, that, by reason of prejudgment of the case, or grudge or ill will to the defendant in the public mind, he cannot have a fair and impartial trial in the county where the offense is charged to have been committed, the circuit court, or the judge thereof in vacation, may change the venue in any criminal case to a convenient county, upon such terms, as to the costs in the case, as may be proper.
(emphasis added).
¶ 19. Here no affidavits were offered in support of the motion. When he overruled the motion, the trial judge stated that "if in fact we get in a voir dire situation and see that we've got a problem with the jury, we'll change it."
¶ 20. Adams offers no case law in support of his argument that the employment of the victim's twin[1] required a change of venue. Indeed, our review of the voir dire indicates that Adams had an adequate opportunity to question all members of the venire, and an opportunity to challenge jurors for cause and peremptorily. We find no basis for Adams' contention. Thus, we find that the trial judge did not abuse his discretion to deny the motion for change of venue.
¶ 21. Accordingly, we affirm.
¶ 22. THE JUDGMENT OF THE JEFFERSON COUNTY CIRCUIT COURT OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JEFFERSON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.
NOTES
[1] The State argued that the sibling worked in the circuit clerk's office at the time of the homicide and was not employed with the Jefferson County Circuit Clerks office at the time of trial.