971 So.2d 630 (2007)
Zachary CONNER, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2005-KA-01994-COA.
Court of Appeals of Mississippi.
May 29, 2007.
Rehearing Denied September 18, 2007.
Certiorari Denied December 6, 2007.
*631 Jennifer Powell Fortner, attorney for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for Appellee.
Before MYERS, P.J., CHANDLER and GRIFFIS, JJ.
MYERS, P.J., for the Court.
¶ 1. Zachary Conner appeals his Warren County Circuit Court convictions for murder, armed robbery, and shooting into an occupied dwelling. The jury returned a verdict against Conner finding that, on July 8, 2004, Conner shot and killed Christopher Cage, robbed him of his shorts and wallet, and fired a bullet intended for Cage which passed through the front door of a residence at 505 Adams Street in Vicksburg. For the crimes of murder, armed robbery, and shooting into an occupied dwelling, Conner was sentenced to respective terms of life, twenty, and five years, to be served in the custody of the Mississippi Department of Corrections. Conner raises the following issues on appeal:
I. WHETHER THE CIRCUIT COURT ERRED IN DENYING CONNER'S REQUEST FOR A CHANGE OF VENUE?

*632 II. WHETHER THE CIRCUIT COURT ERRED IN DENYING CONNER'S MOTION FOR JNOV/NEW TRIAL WHERE THE JURY VERDICT WAS CONTRARY TO THE LAW AND AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 2. Finding no error, we affirm the ruling of the circuit court.

STATEMENT OF THE FACTS
¶ 3. The testimony offered at trial adduced that on the night of July 8, 2004, Tasheba Williams invited friends over to her home located on Adams Street in Vicksburg for a barbeque. In attendance at Williams' barbeque were her boyfriend, Jammal Bell, her neighbor and the victim in this case, Christopher Cage, the appellant herein, Zachary Conner, the cook at the barbeque, Charles Ross, and friends, George Deon Scott, Keon Hatchett, Tameka Williams, and Jimmie Felix. Over the course of several hours, the friends ate barbeque, drank beer, smoked cigarettes, and may have used marijuana and cocaine.
¶ 4. Later in the evening, Conner, Cage, Hatchett, and Scott took part in a game of dice, gambling money on what number would be rolled. Cage got "hot," and ultimately won "all the money," amounting to approximately $240. Conner lost all the money he had to Cage. Cage felt the ire of the group and offered to buy everyone cigarettes and beer if someone would take him to the store. Scott instructed his younger cousin, Hatchett, to drive Cage to the store in Scott's orange Chevrolet Suburban. Conner and Bell accompanied Hatchett and Cage on the excursion. Hatchett was driving, Bell was sitting in the front passenger seat, Conner was seated behind Bell, and Cage behind Hatchett.
¶ 5. When the four men arrived at the Smoke Brake store, located on the corner of Cherry and Clay Streets, Cage and Bell entered the store while Hatchett and Conner remained in the vehicle. Videotape evidence, later recovered by the Vicksburg police, indicated that Cage and Bell purchased cigarettes and beer, and exited the store at 11:39 p.m. Bell testified that while he and Cage were inside the store, Cage told him that he hoped that Hatchett and Conner were not up to something. Hatchett testified at trial that while Cage and Bell were inside the store, Conner repeatedly said, "I've got to get my money back." Once Cage and Bell returned to the vehicle, the four men proceeded in the orange Suburban in the general direction of Williams' house. However, when Hatchett came to the stop sign where he was to make a right turn onto Adams Street, Conner instructed him to "stay straight." Cage became uneasy and attempted to jump out of the vehicle while it was in motion. Hatchett stopped the vehicle and Cage jumped out. Bell and Hatchett both testified that Conner exited the vehicle behind Cage, and began firing multiple shots at Cage as Cage ran up the hill toward the intersection of Cherry and Fayette Streets. Hatchett had also exited the vehicle, but Bell remained inside. After observing Conner shoot Cage, Hatchett returned to the driver's seat in the vehicle, reversed, and backed up the hill to the stop sign he had previously gone through, returning to Williams' house with Bell, but without Conner or Cage.
¶ 6. Upon returning to Williams' house, Hatchett asked his cousin George Deon Scott to step outside. There, Hatchett told Scott, "Zack shot that dude." As Hatchett was explaining to Scott what had transpired, Conner returned to Williams' house on foot. Bell was inside explaining what happened to the others at the party. Conner, Scott, and Hatchett went back *633 inside the house and according to the testimony of everyone at the party, Conner said something to the effect of "Ya'll ain't got nothing to worry about, this one's on me." Bell testified that Conner said that he "could not let [Cage] live," and that he "had to get his money back." Scott asked Hatchett and Conner if Cage was dead, and told them they needed to check. Conner then walked back up Adams Street to the corner of Cherry and Fayette Streets; Hatchett followed at a distance. Hatchett found Cage lying face down, half in the street and half in the grass. Conner approached the body and removed Cage's shorts, socks, and other personal effects. As Conner proceeded back down Adams Street toward Williams' house, Hatchett observed him place Cage's shorts in a city garbage can located in front of 622 Adams Street. Investigators later recovered the shorts from the garbage can.
¶ 7. When Conner returned to Williams' house the second time, he had Cage's identification card in his hand and he was tearing it up using his teeth. Conner then took out a box of .45 caliber Winchester bullets, placed the unused cartridges in a blue rubber glove, and tossed the glove into the neighbors' yard. Conner then tore the Winchester box into small pieces and discarded it into the trash. Bell and Williams then told Conner that he could not stay there, so Conner called a ride. Around midnight, Conner left Williams' house in a white car driven by a man known only as "Little Jesse." Conner returned to Williams' house at approximately 1:30 a.m. on July 9, 2004, wearing different clothes. He stayed for about thirty minutes and then left again.
¶ 8. At trial, Alma Butler, who resides at 505 Adams Street, testified that she was in her living room, lying on the couch, watching television on the night of July 8, 2004. At approximately 11:44 p.m., a .45 caliber Winchester bullet shattered the storm door on the front of her house, went through her wooden front door, through a pillow underneath her legs, and lodged in a barstool cushion. Butler immediately dropped to the floor and crawled to a back bedroom. She then called 911 and reported hearing eight or nine shots fired. The Vicksburg police arrived within five minutes and began investigating the scene. At approximately 12:04 a.m. on July 9, 2004, the Vicksburg police received a call about a man, later identified as Christopher Cage, lying face down on the corner of Cherry and Fayette Streets. Butler's house is directly across a vacant lot approximately fifty to sixty yards from where Cage's body was found.
¶ 9. The crime scene was investigated by Lieutenant Billy Brown and Crime Scene Investigator Linda Hearn. The officers took photographs of Cage's body, depicting Cage lying face down with his socks and shorts removed, which were introduced into evidence at trial. Cage had been shot multiple times and had expired before emergency personnel could arrive. The $240 Cage had won in the dice game was found in his hand. A cold unopened can of Miller High Life Lite beer was found approximately thirty yards from Cage's body. Also found nearby were his flip flop shoes which were scattered along the path he had run in an attempt to flee the hail of bullets unleashed upon him, as well as nine spent .45 caliber Winchester bullet casings. Dr. Steven Hayne, the forensic pathologist who performed the autopsy testified that Cage had been shot four times, once in the ankle, once in the elbow, once in the back, and once in the chest. Dr. Hayne attributed the cause of death to the bullet wound to the chest, which had gone through Cage's liver, diaphragm, and eleventh thoracic vertebra.
*634 ¶ 10. Sargeant Doug King of the Vicksburg police testified that on August 24, 2004 a man who identified himself only as "Tim Ross" (later determined to be Charles Ross, the cook at Williams' party who witnessed Conner give the murder weapon to Quinton Myles) approached King in the police station parking lot and told him that he knew where a murder weapon was hidden. Ross told King that a gun was hidden underneath Quinton Myles' grandmother's old abandoned house located on Oakland Street in Vicksburg. King and another officer searched the Oakland Street address, locating a Glock .45 caliber pistol underneath the southeast corner of the house. Forensic analysis of test bullets fired from the Glock revealed class characteristics consistent with the bullets and shell casings found at Cage's murder scene. Mississippi Crime Lab Forensic Analyst, Starks Hathcock, testified that although he could not be certain that the bullets and shell casings found at Cage's murder scene were from the Glock found at the Oakland Street address, the test results indicated that the bullets and shell casings recovered from the scene and test bullets from the Glock were both .45 caliber Winchester, both had eight lands and grooves, and both had right twist polygonal rifling consistent with those left by a Glock .45 caliber.
¶ 11. Additional testimony was taken from Keon Hatchett, Charles Ross, Tasheba Williams, Tameka Williams, George Dean Scott, and Jimmie Felix. The testimony of all of the State's witnesses was substantially consistent. The jury then returned a verdict of guilty on all counts. Conner then filed a motion for JNOV/new trial, arguing that the circuit court erred in denying his request for change of venue both prior to and after voir dire, and that the verdict was contrary to the law and against the overwhelming weight of the evidence. The motions was denied, and Conner perfected this appeal.

DISCUSSION
I. WHETHER THE CIRCUIT COURT ERRED IN DENYING CONNER'S REQUEST FOR A CHANGE OF VENUE?
¶ 12. In a pre-trial motion on June 6, 2005, Conner's counsel made an ore tenus motion for change of venue on the basis of an article published in The Vicksburg Post on June 5, 2005, the day before trial, which outlined the possible sentences Conner could receive if convicted. The article also included a statement from the district attorney that Conner was the last of nine suspects arrested in connection with the murder of Christopher Cage, and that all of the other suspects had been set free. The circuit court determined that the motion was premature and that a decision would be made following jury selection. After the jury had been seated, the circuit court denied the motion for a change of venue. On appeal, Conner asserts that the circuit court erred in denying his motion for a change of venue based on the pre-trial publicity of the case in the newspaper article and a collective community feeling of Conner's guilt. Conner contends that the jury is not to have any indication before trial of the possible sentences facing the accused upon conviction and that the newspaper article tainted the jury pool in favor of his guilt. In essence, Conner argues that the venire considered him guilty until proven innocent in contradiction to our supreme court's mandate that all defendants are entitled to an impartial jury. See Lanier v. State, 533 So.2d 473, 477 (Miss.1988). The State argues that Conner's attorneys failed to follow the proper procedure for requesting a change of venue, and therefore, the issue is procedurally barred on appeal. As to the *635 merits, the State argues that the motion was properly denied because only two members of the venire stated that they had read the article, and those jurors were dismissed for cause. Further, the State argues that none of the veniremen complained of in Conner's brief were impaneled on the jury.
¶ 13. We are to review a trial judge's decision to deny a motion for change of venue for abuse of discretion. Grayson v. State, 806 So.2d 241, 250(¶ 20) (Miss.2001). Granting a change of venue is a matter that falls largely within the sound discretion of the trial court that a judgment of conviction will not be reversed on appeal on the ground that a change of venue was refused, unless it clearly appears that the trial court abused its discretion. Gray v. State, 728 So.2d 36, 65 (¶ 143) (Miss.1998). Mississippi Code Annotated section 99-15-35 (Rev.2000) provides the requirements for a change of venue as follows:
On satisfactory showing, in writing, sworn to by the prisoner, made to the court, or to the judge thereof in vacation, supported by the affidavits of two or more credible persons, that, by reason of prejudgment of the case, or grudge or ill will to the defendant in the public mind, he cannot have a fair and impartial trial in the county where the offense is charged to have been committed, the circuit court, or the judge thereof in vacation, may change the venue in any criminal case to a convenient county, upon such terms, as to the costs in the case, as may be proper.
(emphasis added).
¶ 14. Here, no affidavits were offered in support of the oral motion. However, instead of immediately denying the motion, the circuit court ruled that the motion was premature and that a decision would be made after voir dire. Our review of the voir dire transcript indicates that only two members of the venire stated that they had read the article and both were dismissed by the court for cause. The record also supports the State's contention that none of the jurors complained of in Conner's brief was selected to sit on the jury. Finally, we cannot find that one statement by any of the jurors Conner now objects to in his appeal was made in the presence of other veniremen so as to prejudice the impartiality of the jury. In applying the precedent established by this Court in Adams v. State, 944 So.2d 86, 89 (¶¶ 17-20) (Miss.Ct.App.2006), we must affirm the circuit court's denial of Conner's motion for a change of venue. Conner had ample opportunity to question members of the venire and to use both his peremptory challenges and challenges for cause. We find no basis for a change of venue, nor any abuse of discretion on the part of the circuit court in denying Conner's motion. Thus, the circuit court's denial of Conner's motion for change of venue is affirmed.
II. WHETHER THE CIRCUIT COURT ERRED IN DENYING CONNER'S MOTION FOR JNOV/NEW TRIAL WHERE THE JURY VERDICT WAS CONTRARY TO THE LAW AND AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 15. Conner asserts that the circuit court erred in denying his motion for JNOV/new trial because he claims the verdict was contrary to the law and against the overwhelming weight of the evidence. In support of his position, Conner argues that the State failed to meet its burden of proving that Conner actually pulled the trigger of the gun that killed Cage. Conner's brief laboriously summarizes the testimony of each of the witnesses who testified at trial and follows *636 each summarization with the statement: "No reasonable juror could find Conner guilty for shooting or robbing Chris Cage or for shooting into Ms. Butler's home on the testimony of [the witness]." The State argues that Conner's argument is flawed in two ways. First, the State asserts that jurors do not look at testimony of a witness in a bubble, rather all testimony and evidence are considered collectively. Second, the State asserts that Conner bases his argument largely on the false assumption that the testimony of the State's witnesses, specifically the testimony of Jammal Bell, Keon Hatchett, George Deon Scott, Tasheba Williams, Tameka Williams, and Jimmie Felix, were not to be believed by the jury because the witnesses were also arrested and previously charged with either the murder of or as an accessory after the fact to the murder of Christopher Cage. However, the State contends that such a determination is within the province of the jury, arguing that it is not for this Court to substitute our judgment for that of the jury.
¶ 16. Issues based upon a denial of a motion for a JNOV challenge the sufficiency of the evidence. Boose v. State, 851 So.2d 391, 394(¶ 13) (Miss.Ct.App.2003). Our standard of review of a claim that the evidence presented at trial was insufficient to support the verdict requires us to accept as true all evidence tending to support the verdict, including the inferences derived therefrom, and ask the question, "after viewing the evidence in the light most favorable to the prosecution, [if] any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Dilworth v. State, 909 So.2d 731, 736(¶ 17) (Miss.2005) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). This Court may only reverse the denial of the JNOV "where with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fairminded jurors could only find the accused not guilty." Boose, 851 So.2d at 394(¶ 14) (quoting Harveston v. State, 493 So.2d 365, 370 (Miss.1986)).
¶ 17. As distinguished from a motion for JNOV, issues based upon a denial of a motion for a new trial challenge the weight, not the sufficiency of the evidence. Id. at 394(¶ 13). The standard for reviewing whether or not a jury verdict is against the overwhelming weight of the evidence is that the reviewing court must accept as true all evidence which supports the verdict and will reverse only if convinced that the trial court abused its discretion in not granting a new trial. Bradley v. State, 921 So.2d 385, 389(¶ 12) (Miss.Ct.App.2005) (citing Price v. State, 898 So.2d 641, 652(¶ 26) (Miss.2005)). A new trial will not be ordered unless we are convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow the verdict to stand would be to sanction an unconscionable injustice. Id. This high standard is necessary because any factual disputes are properly resolved by the jury, not by an appellate court. Id. Thus, our scope of review on this issue is limited in that all evidence must be construed in the light most favorable to the verdict. Herring v. State, 691 So.2d 948, 957 (Miss.1997) (citing Mitchell v. State, 572 So.2d 865, 867 (Miss.1990)).
¶ 18. The testimony introduced at trial, when viewed collectively, was far more than adequate to support a conviction on each of the charges Conner faced. Both Bell and Hatchett testified to seeing Conner shoot Cage, and Bell, Hatchett, Scott, Williams, and Ross each testified to hearing Conner admit shooting Cage. Hatchett testified to observing Conner remove Cage's clothing and wallet, and Alma Butler testified to a shot being fired through her front door at roughly the same time *637 Cage was shot. Photographic evidence proved that Butler's house was clearly visible from the corner where Cage's body was found. Further, the bullets and cartridges found at the murder scene and recovered from Butler's house had at least four class characteristics in common with the bullets test fired from the .45 caliber Glock retrieved from Oakland Street. Testimony of Sergeant King and Charles Ross connected Conner to the weapon. We find Conner's argument before this Court to discredit the witnesses against him unpersuasive. It is the jury's function to decide which evidence and testimony is credible and which is not, and we will not substitute our judgment for theirs. Bradley, 921 So.2d at 389(¶ 12). Accordingly, we find sufficient evidence in the record to affirm Conner's convictions for murder, armed robbery, and shooting into an occupied dwelling.
¶ 19. THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT OF CONVICTIONS OF MURDER, ARMED ROBBERY AND SHOOTING INTO AN OCCUPIED DWELLING AND SENTENCES OF LIFE, TWENTY AND FIVE YEARS RESPECTIVELY TO BE SERVED IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL SENTENCES SHALL RUN CONSECUTIVELY WITH EACH OTHER. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WARREN COUNTY.
KING, C.J., LEE, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.