952 So.2d 1043 (2007)
Herbert G. ROLES, III, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-00362-COA.
Court of Appeals of Mississippi.
March 27, 2007.
*1045 Harry B. Ward, attorney for appellant.
Office of the Attorney General by W. Daniel Hinchcliff, attorney for appellee.
Before MYERS, P.J., CHANDLER and ROBERTS, JJ.
CHANDLER, J., for the Court.
¶ 1. Herbert G. "Tinker" Roles, III, was convicted of the statutory rape of a thirteen-year-old girl in the Circuit Court of Hancock County, Mississippi, and sentenced to serve a term of twenty years in the custody of the Mississippi Department of Corrections. After being denied motions for a directed verdict and a new trial, Roles appealed the judgment, raising the following issues, which we quote verbatim:
I. THE TRIAL JUDGE ERRED IN NOT SUPPRESSING THE PANTIES WHICH WERE RETRIEVED WITHOUT A SEARCH WARRANT.
II. THE STATE FAILED TO PROVE THE ELEMENT OF SEXUAL INTERCOURSE.
III. THE TRIAL JUDGE ERRED IN REFUSING A DIRECTED VERDICT FOR THE DEFENDANT.
IV. A BATSON HEARING SHOULD HAVE BEEN CONDUCTED.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Because of the nature of the crime, we do not use the victim's name, her family's, or the names of the victim's underage friends. Herbert G. Roles was a police officer with the Bay St. Louis police department. K.M. was a thirteen-year-old girl at the time of the alleged incidents; Roles was thirty-four years old. A former co-worker of K.M.'s mother, Roles was a family friend and would frequently visit K.M.'s home.
¶ 4. On March 25, 2002, one of K.M.'s co-workers told K.M.'s mother, M.M., that Roles had been engaging in sexual activity with K.M.M.M. immediately drove to K.M.'s school and confronted her with the allegations. K.M. confirmed that she had sexual relations with Roles. M.M. then contacted the police and school officials, whereby K.M. proceeded to give two statements, one on March 25 and another on March 26.
¶ 5. K.M. stated that three separate incidents with Roles occurred. The first, on February 1, 2002, allegedly took place when K.M.'s mother was out of town, working at a Mardi Gras parade in Louisiana. K.M., who was supposed to be staying with her aunt, had gone back home for the evening to clean her room. Roles called the house to speak with M.M., was told that the parents were out of town, and thereafter arrived at the home by himself. K.M. claims that Roles took her into a bedroom, undressed her, and had sexual intercourse with her.
¶ 6. The second incident allegedly occurred on February 18, 2002, when Roles was visiting K.M.'s home. K.M. had recently purchased a car from her work earnings, although she was not old enough to drive legally. K.M. offered Roles a ride around the block to show him her new car, wherein she claims he penetrated her with his fingers while in the vehicle.
*1046 ¶ 7. On March 22, 2002, the third incident took place when Roles met K.M. at a movie theater. K.M. was at the theater to watch a movie with her friend, P.B., and P.B.'s boyfriend, but K.M. saw Roles in the parking lot and decided to go for a ride with him alone in his car. The two drove to a Welcome Center rest stop on I-10 and engaged in sexual intercourse in the vehicle. During this encounter, K.M. gave Roles a pair of her orange underpants, which he later put in a black bag in the back of his car.
¶ 8. After K.M. gave her initial statements concerning the February 18 and March 22 incidents, a warrant was issued for Roles's arrest. Officer Tom Burleson, who knew Roles, called Roles and asked him to come to the Bay St. Louis Police Station for questioning. During the interview, Burleson testified that Roles initially admitted to holding hands and kissing K.M., but after a question regarding whether "one thing led to another," Roles stated affirmatively that he had engaged in sexual relations with K.M. When asked if K.M. could be pregnant, Roles stated that was not possible because he had ejaculated on his stomach and her legs. At some point during the interview, Officer Matt Carver searched a black bag found in Roles's vehicle and found K.M.'s orange underpants.
¶ 9. The next day on March 26, 2002, K.M. went back to the police station with her aunt and recounted the allegations of the February 1 incident at her home. K.M. also spoke with Officer Burleson by phone that day and told Burleson that the underpants belonged to her.
¶ 10. Roles was indicted on July 18, 2002, in Hancock County, Mississippi, for two counts of statutory rape pursuant to Mississippi Code Annotated Section 97-3-65(1)(b) (Rev. 2006), along with sexual battery pursuant to Section 97-3-95(1)(d).
¶ 11. On February 21, 2003, Roles was found not guilty of Count I of statutory rape and Count III of sexual battery, but guilty on Count II of statutory rape, arising from the March 22, 2002 incident. Roles was sentenced to twenty years in the custody of the Mississippi Department of Corrections. Roles filed a motion for a directed verdict, and in the alternative, a motion for a new trial. Both motions were denied.

LAW AND ANALYSIS
I. THE TRIAL JUDGE ERRED IN NOT SUPPRESSING THE PANTIES WHICH WERE RETRIEVED WITHOUT A SEARCH WARRANT.
¶ 12. Roles first argues that K.M.'s undergarments were illegally obtained without a search warrant and, therefore, should not have been admitted into evidence. However, Roles admits that the record is "void" as to how the undergarments were obtained by law enforcement and that the record is also "void" of any specific motion to suppress the evidence. No objection was made at trial to the admission of the undergarments as evidence.
¶ 13. Because Roles did not make a timely objection to the admission of the undergarments as evidence, he is procedurally barred from appealing this issue. "Failure to make a contemporaneous objection waives an issue for purposes of appeal." Spicer v. State, 921 So.2d 292, 305 (¶ 22) (Miss. 2006). Therefore, this issue is without merit.
II. THE STATE FAILED TO PROVE THE ELEMENT OF SEXUAL INTERCOURSE.
¶ 14. Roles contends that the State failed to prove the essential element *1047 of "sexual intercourse," because K.M.'s testimony at trial differed from the statements she gave to a police investigator, and medical evidence was not used to corroborate her version of events. Essentially, Roles attacks K.M.'s credibility as a witness.
¶ 15. It is well established that "the jury is the judge of the credibility of a witness." Price v. State, 898 So.2d 641, 652 (¶ 25) (Miss. 2005). Matters regarding the weight and credibility of the evidence are to be resolved by the jury, and we will not set aside a guilty verdict unless the evidence is the result of prejudice, bias or fraud. Id. Initially, K.M. told a police investigator that she had sex with Roles in the passenger seat of his car in two different positions. At trial, K.M. testified that she had sex with Roles while sitting on top, facing him. While K.M.'s trial testimony may have been inconsistent with her initial statements to the police, her credibility was a matter for the jury to decide.
¶ 16. Moreover, the State offered the necessary evidence to meet its burden of proof for "sexual intercourse." Pursuant to Section 97-3-65(1)(b), the crime of statutory rape occurs when, "A person of any age has sexual intercourse with a child who: (i) Is under the age of fourteen (14) years; (ii) Is twenty-four (24) or more months younger than the person; and (iii) Is not the person's spouse." The State established the ages of the victim and the defendant through the testimony of K.M. and Roles. K.M. was thirteen years old and Roles was thirty-four years old. Both parties stipulated that they were not married at the time of the alleged incidents.
¶ 17. The State also established through K.M.'s testimony that she and Roles engaged in the act of sexual intercourse. As defined by the statute, "sexual intercourse" means a "joining of the sexual organs of a male and female human being in which the penis of the male is inserted into the vagina of the female." Miss.Code Ann. § 97-3-65(6). The State must prove that there was "some penetration" of the victim's vagina by the defendant's penis, however slight the penetration may be. Wilson v. State, 606 So.2d 598, 599 (Miss. 1992). For victims under the age of fourteen, if there is evidence of laceration and/or tearing of the child's private parts, then proof of penetration is not necessary. Id. at 600. The court in Wilson further articulated that actual medical evidence of penetration is not necessary and that proof of penetration may be offered by witness testimony or by circumstantial evidence. Id.
¶ 18. K.M. testified that she could feel Roles's penis inside of her and when she told him she did not want to get pregnant, he said that he knew what he was doing. K.M. also stated that when Roles was near completion of the act, he instructed K.M. to "get off of him," and she witnessed him ejaculate on his shirt. Officers Burleson and Carver testified that Roles admitted to having sexual intercourse with K.M. Burleson stated that when he asked Roles if K.M. could be pregnant, Roles responded in the negative, saying that he ejaculated on his stomach and K.M.'s legs. K.M.'s friend, P.B., further corroborated K.M.'s testimony by stating that she witnessed K.M. get into Roles's car at the movie theater on the night in question and also saw her return to the theater parking lot approximately one hour later.
¶ 19. We find that sufficient testimony was presented to the jury to determine the question of whether "sexual intercourse" had occurred. The record does not indicate any prejudice, bias or fraud in regards to the evidence offered. Therefore, this issue is without merit.
*1048 III. THE TRIAL JUDGE ERRED IN REFUSING A DIRECTED VERDICT FOR THE DEFENDANT.
¶ 20. Roles contends that the lower court erred in failing to grant his motion for a directed verdict at the close of the State's case because the State failed to prove all of the elements of statutory rape. In the alternative, Roles maintains that the court erred in not granting his motion for a new trial at the conclusion of the case based on these same grounds.
A. Sufficiency of the Evidence
¶ 21. Roles argues that the State failed to present credible evidence from which a reasonable and fair-minded juror could find beyond a reasonable doubt that he committed statutory rape. This Court reviews a motion for directed verdict under an abuse of discretion standard of review. Morgan v. State, 703 So.2d 832, 835 (Miss. 1997). A motion for directed verdict challenges the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss. 1993). When reviewing a trial court's denial of a motion for directed verdict, we consider the evidence in the light most favorable to the prosecution and the State must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Dilworth v. State, 909 So.2d 731, 736 (¶ 17) (Miss. 2005). Therefore, it is our job to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss. 2005).
¶ 22. As stated above, statutory rape occurs when someone of any age has sexual intercourse with a child who is under the age of fourteen and is not the person's spouse. Miss.Code Ann. § 97-3-65(1)(b). Proof involving "some penetration" of the victim's vagina by the defendant's penis must be established. Wilson, 606 So.2d at 599. K.M.'s testimony, coupled with testimony from Officers Burleson and Carver, and K.M.'s friend, P.B., provided ample evidence for the jury to determine whether the statutory requirements had been met. K.M. specifically stated that her private parts had been penetrated. The officers further testified that Roles admitted to having sexual relations with K.M. Therefore, this issue is without merit.
B. Weight of the Evidence
¶ 23. Roles argues that he should have been granted a new trial because the State presented no credible evidence from which a reasonable and fair-minded juror could find him guilty of statutory rape beyond a reasonable doubt. We find this argument to be without merit.
¶ 24. When reviewing a denial of a motion for a new trial, this Court will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Herring v. State, 691 So.2d 948, 957 (Miss. 1997). On a motion for new trial, the court sits as a "thirteenth juror," with the evidence being weighed in the light most favorable to the verdict. Amiker v. Drugs For Less, Inc., 796 So.2d 942, 947 (¶ 18) (Miss. 2000). Granting a new trial should be invoked only in "exceptional cases in which the evidence preponderates heavily against the verdict." Id.
¶ 25. The evidence consists of (1) testimony from the victim that the accused's penis penetrated her vagina, (2) testimony from the victim's mother that K.M. admitted to having sexual relations with Roles, (3) testimony from two officers regarding Roles's confession, (4) testimony from the victim's friend who witnessed K.M. in Roles's car on the night in question, (5) K.M.'s undergarments found in Roles's car, and (6) letters K.M. wrote to Roles. *1049 Roles was the only person to testify on his behalf, in which he denied having sexual relations with K.M. Sitting as the "thirteenth juror," we find that no new trial is warranted. The jury's verdict is consistent with the weight of the evidence and we cannot say that the verdict resulted in an unconscionable justice. The trial court did not abuse its discretion in refusing to grant a new trial. Therefore, this issue is also without merit.
IV. A BATSON HEARING SHOULD HAVE BEEN CONDUCTED.
¶ 26. In his final claim Roles, an African-American, states that a Batson challenge should have been raised when the State used three peremptory challenges to strike prospective jurors. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The State accepted one black male to the jury, but struck another black male, one black female and one female of undetermined race. Each of the stricken jurors stated in voir dire that they either knew Roles personally or knew of him through a friend. The third woman, whose race is unclear, further stated that she heard about the case from her friend who knew Roles personally.
¶ 27. When the State raised peremptory challenges for these jurors, the court asked Roles's attorney if he would like to raise a Batson challenge. Roles's attorney replied, "No, sir." Roles maintains that his attorney should have raised the Batson issue at trial. We will not reverse factual findings relating to a Batson challenge unless they are clearly erroneous. Johnson v. State, 792 So.2d 253, 257 (¶ 10) (Miss. 2001). Additionally, this issue is procedurally barred by Roles's failure to make a timely objection at trial. Russell v. State, 607 So.2d 1107, 1117 (Miss. 1992).
¶ 28. A defendant seeking to establish a Batson violation must demonstrate (1) that he is a member of a "cognizable racial group," (2) that the prosecutor has exercised peremptory challenges toward the elimination of veniremen of his race, and (3) that the facts and circumstances infer that the prosecutor used his peremptory challenges for the purpose of striking minorities. Lockett v. State, 517 So.2d 1346, 1349 (Miss. 1987). Once the prima facie showing is made, the prosecutor must offer "`a clear and reasonably specific' explanation of his `legitimate reasons' for exercising the challenges." Id. (citing Batson, 476 U.S. at 98, n. 20, 106 S.Ct. 1712).
¶ 29. Roles failed to raise a Batson challenge at trial. The trial court therefore did not have the opportunity to make any findings necessary to preserve this issue for appellate review. Accordingly, Roles's Batson challenge is without merit.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF HANCOCK COUNTY OF CONVICTION OF COUNT II OF STATUTORY RAPE AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HANCOCK COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.