950 So.2d 262 (2007)
Eddie SAUCIER a/k/a Eddie Lee Saucier, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-01630-COA.
Court of Appeals of Mississippi.
February 27, 2007.
*263 Lisa D. Collums, Gulfport, attorney for appellant.
Office of the Attorney General by Deshun T. Martin, attorney for appellee.
Before MYERS, P.J., CHANDLER and ROBERTS, JJ.
MYERS, P.J., for the Court.
¶ 1. Eddie Saucier was convicted in the Circuit Court of Harrison County of the July 2, 2002 murder of Dennis Wilson and sentenced as a habitual offender to life imprisonment without the possibility of parole. At the close of the prosecution's case-in-chief, Saucier moved for a directed verdict, which was denied. Following the entry of the final judgment, Saucier filed a motion for a judgment notwithstanding the verdict and a motion for a new trial; both were denied. Aggrieved by the circuit court's rulings, Saucier now appeals, raising the following two issues:
I. WHETHER THE TRIAL COURT ERRED WHEN IT DENIED SAUCIER'S MOTIONS FOR DIRECTED VERDICT AND JNOV?
II. WHETHER THE TRIAL COURT ERRED WHEN IT DENIED SAUCIER'S MOTION FOR A NEW TRIAL?
¶ 2. Finding no reversible error, we affirm the judgment of the circuit court.

STATEMENT OF FACTS
¶ 3. On the morning of July 2, 2002, residents of the L.C. Jones Apartments, located in Gulfport, Mississippi, noticed a chair pushed against the wall, underneath an open window, outside the apartment of Dennis Wilson, an elderly amputee. Concerned for Wilson's well-being and fearing that someone may have broken into his apartment, one of Wilson's neighbors called to him through the open window. When Wilson failed to respond, the neighbor summoned the police. Officers Walter Griffin and John Prystupa of the Gulfport Police Department responded to the call, and found Wilson deceased, lying face up in his bed with a blood soaked pillow covering his face. The medical examiner later determined, and testified at trial, that Wilson's body showed several signs of struggle, including lacerations to his mouth, consistent with being punched, and several stab wounds to the head, including one entering Wilson's eye socket, piercing both the sinus cavity and brain. The entry patterns of the stab wounds were consistent with those made by a Phillips head screwdriver. In an adjacent bedroom, officers found Wilson's empty wallet lying on the floor near his safe. The safe had been pried open, and the tools of the infiltration, a pair of snips and a hammer, were lying on the floor nearby. The officers also *264 noticed a bucket and lid with reddish-brown smudges lying on the floor near the safe. Forensic analysis later revealed that the smudges on the bucket and lid contained the DNA of Eddie Saucier, a man with two previous felony burglary convictions, who lived in an adjacent apartment complex.
¶ 4. The record indicates that Wilson and Saucier had become friendly in the months leading up to Wilson's murder, and that Saucier often did favors for Wilson such as making minor repairs to Wilson's apartment or driving Wilson to the grocery store. Wilson's step-daughter, Rose Thompson, testified that Wilson moved to the government subsidized L.C. Jones Apartments after his home burned down in 1998. Thompson testified that Wilson received $15,000 in homeowners insurance proceeds as a result of the fire and that he kept most of this money in the safe in his apartment. Thompson further testified that she had no knowledge of Wilson's financial status at the time of his murder, but that she was not aware of any extravagant purchases made by Wilson since he received the insurance proceeds, and he had not begun rebuilding his home. She testified that, to the best of her knowledge, the majority of Wilson's insurance money was still stored in his safe at the time of his murder. Several other neighbors and relatives testified to having knowledge of both Wilson's receipt of the insurance proceeds and of the safe he kept in his apartment. Further, the general consensus of the neighbors and relatives who testified was that Saucier had knowledge of Wilson's receipt of the insurance proceeds and that Wilson kept most of the money in his safe.
¶ 5. The record further indicates that, in the days following Wilson's murder, Saucier was seen with an unusually large amount of cash. Robert Callahan, a neighbor of both Wilson and Saucier, testified that on the afternoon following Wilson's murder, Saucier gave him five dollars to drive him home from a friend's house and another five dollars to go to the store and buy some beer. Later, Saucier offered Callahan $100 if he would go to the store and buy him some cigarettes, a lighter, and some whiskey; Callahan refused. Callahan also testified that two days after Wilson's murder, Saucier offered him $200 to drive him to his brother's house in Laurel. Callahan testified that, while on the way to Laurel, Saucier was acting strangely and asked to stop at the Wal-Mart in Hattiesburg. There, Saucier bought new clothes and placed the clothes he was wearing in a plastic bag. Callahan testified that he jokingly asked Saucier if he had killed someone to get "all that money," and Saucier just smiled. After Callahan dropped Saucier off in Laurel, Saucier fled to Atlanta, Georgia, and then California, where he was eventually arrested and extradited back to Harrison County, Mississippi.
¶ 6. At Saucier's trial, the most damaging testimony offered against him was that of Gregory Clayton. Clayton and Saucier had been cellmates following Saucier's arrest, and Clayton testified to discussing Wilson's murder with Saucier. Clayton testified that Saucier admitted that he had broken into Wilson's apartment. Clayton's testimony further provided that Saucier intended only to steal Wilson's money so that he could purchase drugs, but when Wilson awoke, Saucier stabbed him with a screwdriver and smothered him with a pillow. Wilson's autopsy confirmed that Wilson died as a result of blood from his stab wounds seeping into his lungs and causing him to suffocate. Saucier told Clayton that after killing Wilson, he went into the other bedroom, pried open the safe with a pair of snips and a hammer, and took $8,500. Clayton's testimony went unrebutted *265 and the record indicates, that in exchange for his testimony, Clayton did not receive any promise of a reduction in the mandatory sentence he was already serving on a robbery conviction.

LEGAL ANALYSIS
I. WHETHER THE TRIAL COURT ERRED WHEN IT DENIED SAUCIER'S MOTIONS FOR DIRECTED VERDICT AND JNOV?
II. WHETHER THE TRIAL COURT ERRED WHEN IT DENIED SAUCIER'S MOTION FOR A NEW TRIAL?
¶ 7. We address the issues presented by Saucier together.

STANDARD OF REVIEW
¶ 8. Assignments of error based upon a denial of a motion for a directed verdict or a JNOV challenge the sufficiency of the evidence. Boose v. State, 851 So.2d 391, 394(¶ 13) (Miss.Ct.App.2003). The standard of review of a claim that the evidence presented at trial was insufficient to support the verdict requires the reviewing court to accept as true all evidence tending to support the verdict, including the inferences derived therefrom, and ask the question, "after viewing the evidence in the light most favorable to the prosecution, [if] any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Dilworth v. State, 909 So.2d 731, 736(¶ 17) (Miss.2005) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). This Court may only reverse the denial of the directed verdict or JNOV "where with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." Boose, 851 So.2d at 394(¶ 14) (quoting Harveston v. State, 493 So.2d 365, 370 (Miss.1986)).
¶ 9. As distinguished from a motion for directed verdict or JNOV, assignments of error based upon a denial of a motion for a new trial challenge the weight, not the sufficiency of the evidence. Id. at 394(¶ 13). The standard of review for deciding whether or not a jury verdict is against the overwhelming weight of the evidence is that the reviewing court must accept as true all evidence which supports the verdict and will reverse only if convinced that the trial court abused its discretion in not granting a new trial. Bradley v. State, 921 So.2d 385, 389(¶ 12) (Miss. Ct.App.2005) (citing Price v. State, 898 So.2d 641, 652(¶ 26) (Miss.2005)). A new trial will not be ordered unless we are convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow the verdict to stand would be to sanction an unconscionable injustice. Id. This high standard is necessary because any factual disputes are properly resolved by the jury, not by an appellate court. Id.

DISCUSSION
¶ 10. Saucier contends that the prosecution's case was based entirely on the following evidence: (1) that he had a significant amount of cash in his possession in the days following Wilson's murder, (2) that his DNA was found on a bucket near Wilson's safe, and (3) that the testimony of Gregory Clayton, a convicted felon, sought favor from the State. As to the money, Saucier argues that not one witness ever testified to seeing any money in Wilson's safe and that the sum of money witnesses saw in Saucier's possession in the days following the murder was substantially less than the $8,500 he was alleged to have taken. As to the DNA, Saucier argues that the State's expert in DNA analysis *266 could not establish when Saucier's DNA was placed on the bucket. He also points out that his DNA was not found anywhere else in Wilson's apartment. Finally, Saucier attacks Clayton's credibility stating that Clayton is "a criminal and a liar," and asserts that when Clayton was arrested on the robbery charge, for which he is now serving time, he gave the police an alias. Further, Saucier argues that Clayton left out significant details about how the crime was committed and that any knowledge Clayton had about Wilson's murder came from reading the trial transcript, not from any conversation between Saucier and Clayton. Saucier challenges both the sufficiency of the evidence presented to establish his guilt and the weight assigned to the evidence by the jury. He claims that the above facts would prevent any reasonable juror from finding him guilty of Wilson's murder beyond a reasonable doubt.
¶ 11. As to Saucier's challenge to the sufficiency of the evidence, we recognize that in order to convict Saucier of murder, the State was required to prove beyond a reasonable doubt that Eddie Saucier: (1) killed Dennis Wilson (2) without authority of law (3) with deliberate design to effect his death. Miss.Code Ann. § 97-3-19(1)(a) (Rev.2006). Viewing the evidence presented at trial in the light most favorable to the State, we find the testimony of Callahan and Clayton, as well as the presence of Saucier's DNA at the crime scene to be sufficient evidence to allow a rational juror to conclude that the State proved each element of murder against Saucier. We therefore affirm the circuit court's denial of Saucier's motion for a directed verdict and JNOV. As to Saucier's challenge to the weight given to the evidence, we hold that it is the jury's function to decide which evidence and testimony is credible and which is not. Bradley, 921 So.2d. at 390(¶ 16). Based on the evidence presented, we are satisfied that the jury did just that and returned a reasonable verdict. We, therefore, affirm the decision of the circuit court.
¶ 12. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE WITHOUT THE POSSIBILITY OF PAROLE OR PROBATION IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
KING, C.J., LEE, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.