998 So.2d 1019 (2008)
Colt Allen CHRISTIAN, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2007-KA-00758-COA.
Court of Appeals of Mississippi.
August 26, 2008.
Rehearing Denied January 13, 2009.
*1021 George S. Shaddock, attorney for appellant.
Office of the Attorney General by John R. Henry, attorney for appellee.
Before MYERS, P.J., IRVING and CARLTON, JJ.
MYERS, P.J., for the Court.
¶ 1. Colt Allen Christian was found guilty of aggravated assault by a jury in the Circuit Court of Jackson County and sentenced to twenty years, with eighteen years to serve in the custody of the Mississippi Department of Corrections and two years of post-release supervision, along with a $5,000 fine. Christian now appeals that conviction and sentence.

FACTS AND PROCEDURAL HISTORY
¶ 2. On June 19, 2005, the Jackson County Sheriff's Department was called out to investigate a possible hit-and-run accident, which later developed into a shooting investigation. Testimony at trial developed two contrasting versions of the events that led up to the shooting of Gene Roberts (Roberts). Christian testified at trial that he and his girlfriend, Amanda Roberts, were driving home when Roberts began following them on Shingle Mill Landing Road in Jackson County. The couple stopped at a stop sign on Fort Lake Road; Christian alleged that Roberts rammed the couple's trailer. Christian later claimed that after this incident he continued on to Chatsworth Road to return home with Roberts following behind. Christian testified that he stopped his vehicle before reaching his home and approached Roberts's vehicle with a .45 caliber pistol in his hand. Christian testified that when Roberts opened his door, it hit Christian's hand, causing the pistol to discharge and a bullet to hit Roberts in the head. Christian testified that he was unaware of Roberts's injury at the time he left the scene. Christian testified that he then went back to his vehicle and returned home, where he and his girlfriend were later arrested.
¶ 3. The State's version of events differed from Christian's. The State maintained that Roberts was traveling north on Franklin Creek Road. The State contended that Christian was following closely, or tailgating, and subsequently bumped into Roberts's car. Roberts then pulled his vehicle to the side of the road and waited for Christian to follow suit. However, Christian continued traveling. Roberts followed and called 911 to report the accident. Roberts gave a description to the 911 operator of Christian's vehicle, a "jacked up" purple F-150 truck. Christian pulled his vehicle over when he reached Chatsworth Road, which was close to his home. The State maintained that the 911 call clearly recorded Roberts asking Christian to stay back and also recorded Christian cursing at Roberts to exit his *1022 vehicle. It was then alleged that Christian, who had approached with a .45 caliber pistol, knocked out the glass on the driver's side and proceeded to shoot Roberts in the head. The State maintained that Christian then left the scene and drove home. The State also maintained that after Roberts was wounded his truck traveled in reverse onto another road, where he was left alone and bleeding from his wound. The State then argues that Christian returned to the scene of the accident in a small car, where Officer Robert Zwick was helping Roberts. Officer Zwick testified that when the call was first received, he recognized the description of the truck and identified it as belonging to Christian. Officer Zwick testified that Christian asked if the person hurt was his little brother. Officer Zwick also testified that Christian told him he was not driving his purple truck that day, but his brother Caleb was driving the truck earlier. Christian then left the scene and returned to his home.
¶ 4. Christian was convicted by a jury of aggravated assault. After sentencing, he filed a post-trial motion for a new trial, which was denied. As a result, Christian now seeks a review of three issues on appeal.

STANDARD OF REVIEW
¶ 5. This Court will only overturn a trial court's admission or exclusion of expert testimony if it is found to be an abuse of discretion. Ellis v. State, 934 So.2d 1000, 1004(¶ 17) (Miss.2006) (quoting Miss. Transp. Comm'n v. McLemore, 863 So.2d 31, 34(¶ 4) (Miss.2003)). Additionally, the trial court's ruling will be affirmed "[u]nless we can safely say that the trial court abused its judicial discretion in allowing or disallowing evidence so as to prejudice ... the accused in a criminal case...." Id. (quoting Jones v. State, 918 So.2d 1220, 1223(¶ 9) (Miss.2005)).
¶ 6. "This Court may reverse a conviction and sentence based upon the cumulative effect of errors that independently would not require reversal." Sykes v. State, 895 So.2d 191, 196(¶ 21) (Miss.Ct. App.2005) (citing Jenkins v. State, 607 So.2d 1171, 1183-84 (Miss.1992)). The supreme court has established the standard by which this Court is to review the effect of cumulative errors on a defendant's right to a fair trial:
upon appellate review of cases in which we find harmless error or any error which is not specifically found to be reversible in and of itself, we shall have the discretion to determine, on a case-by-case basis, as to whether such error or errors, although not reversible when standing alone, may when considered cumulatively require reversal because of the resulting cumulative prejudicial effect.
Byrom v. State, 863 So.2d 836, 847(¶ 13) (Miss.2003).

I. WHETHER THE TRIAL COURT ERRED IN REFUSING TO ALLOW JIM BOWMAN TO BE DESIGNATED AS AN EXPERT WITNESS.
¶ 7. Christian argues that his defense was severely limited by the restrictions placed on his expert witness, Jim Bowman, while testifying at trial. Christian contends that the limitation of Bowman's expert opinion prevented him from effectively presenting and supporting his theory that the shooting of Roberts was accidental.
¶ 8. The State argues that the trial court did not err in sustaining its objection to Bowman as a shooting reconstruction expert. The State contends that Christian failed to demonstrate the existence of a field of expertise known as shooting reconstruction. *1023 The State points out that Christian failed to produce any books, treatises, studies, or materials to demonstrate the existence and reliability of a shooting reconstruction expert. The State also noted that although Bowman claimed to have attended a course called gunshot reconstruction, there was no proof that such a course existed or that he had received credit for that particular course. The State argues that the proposed testimony by Bowman that the gun fired accidentally when it struck the vehicle was speculative at best. Further, the State contends that Bowman completely failed to demonstrate or explain the methods he used to arrive at the conclusion that the gun discharged accidentally. In addition, the State argues that even if it was error to refuse to allow Bowman to testify as an expert in shooting reconstruction that error was harmless. The State points out that Christian, partially through his own testimony, established the theory of an accidental shooting in the presence of the jury.
¶ 9. "A witness may testify as an expert if `qualified by virtue of his or her knowledge, skill, experience or education,' but only if `the witness's scientific, technical or other specialized knowledge [will] assist the trier of fact in understanding or deciding a fact in issue.'" Bowman v. CSX Transp., Inc., 931 So.2d 644, 654(¶ 35) (Miss.Ct.App.2006) (quoting M.R.E. 702). "The trial judge has the gate-keeper function of determining that `the witness is indeed qualified to speak an opinion on a matter within a purported field of knowledge.'" Id. (quoting M.R.E. 702 cmt.).
¶ 10. Christian attempted to introduce Bowman as an expert in the field of firearms and shooting reconstruction. Christian tendered Bowman as an expert in firearms, which the State accepted. However, the State objected to testimony by Bowman opining that Christian's hand interfered with the movement of the slide on the gun. The State specifically objected that the question was outside Bowman's field of expertise, which the trial court sustained. The State also objected to testimony by Bowman opining as to what happened when the victim's truck was struck with the weapon, i.e., his opinion as to what happened after the gun struck either the window or door of the vehicle. The State objected to the question because Bowman had not been qualified as a witness in firearm shooting reconstruction. The trial court sustained the State's objection. The trial court eventually determined that Bowman was qualified to testify as a firearm expert, but he was not qualified to testify as a shooting reconstruction expert because it had not heard enough to demonstrate that Bowman was qualified to testify as an expert in that field. Shooting reconstruction itself is the examination of a crime scene to determine the origin of the bullet. Christian failed to present sufficient qualifications regarding Bowman. Additionally, Bowman failed to sufficiently explain the reasoning behind his theory that the shooting was accidental. Therefore, from our review of the record, we cannot find that the trial court abused its discretion in failing to allow Bowman to testify as a shooting reconstruction expert.

II. WHETHER THE CIRCUIT COURT ERRED IN OVERRULING THE MOTION FOR A NEW TRIAL, THE MOTION FOR A DIRECTED VERDICT OR, IN THE ALTERNATIVE, THE MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT.

A. MOTION FOR A NEW TRIAL.
¶ 11. The standard of review for deciding "whether or not a jury verdict is *1024 against the overwhelming weight of the evidence is that the [appellate court] must accept as true all evidence which supports the verdict and will reverse only if convinced that the trial court abused its discretion in not granting a new trial." Saucier v. State, 950 So.2d 262, 265(¶ 9) (Miss. Ct.App.2007) (citing Bradley v. State, 921 So.2d 385, 389(¶ 12) (Miss.Ct.App.2005)). This court must determine that the "verdict is so contrary to the overwhelming weight of the evidence that to allow the verdict to stand would be to sanction an unconscionable injustice." Id. There is great deference to the trial court because "factual disputes are properly resolved by the jury, not by an appellate court." Id.
¶ 12. Christian argues that the shooting was accidental and the evidence at trial left a reasonable doubt as to his guilt. Christian argues that the State failed to rebut evidence that supported his version of events including: (1) damage to his jet skis, (2) the injury to his hand, and (3) testimony from Bowman opining the theory that the pistol accidentally discharged. Christian argues that the State failed to rebut the theory that the shooting was accidental. In summary, Christian contends that the State failed to prove every element of aggravated assault beyond a reasonable doubt. Further, Christian argues that under Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933), since Christian is the only eyewitness to the crime, his version of the crime must be accepted as true unless it is substantially contradicted in material elements by credible witnesses, physical facts, or facts commonly known.
¶ 13. The State argues that taking all the evidence as true which supports the verdict shows that Christian, annoyed by the driving behavior of Roberts, bumped Roberts's vehicle. The State contends that the evidence supporting the verdict further showed that Roberts then pulled off the road; however, Christian continued driving rather than pull over to inspect the damage to Roberts's vehicle. The State argues there was evidence that Roberts called for assistance while following Christian. After Roberts began following Christian, both vehicles pulled off the road. The State points out that the 911 call transcript shows that Christian ordered Roberts out of his vehicle, with Roberts giving no resistance or threats in return. Further, the State presented its theory that Christian broke Roberts's driver-side window and then shot Roberts. The State additionally argues that Christian himself admitted early in the investigation that he had shot Roberts, but he claimed it was in self-defense. The State points out that this admission differs from Christian's trial testimony, which claimed that the shooting was purely accidental. During that admission, Christian claimed he thought he witnessed Roberts reach for something. The State further demonstrated that evidence at trial contradicted Christian's testimony in the following ways: Christian is clearly heard in the audio tape acting as the aggressor; the pistol involved in the shooting had four safeties; and testimony from Deputy Zwick, who provided medical assistance to Roberts at the scene of the crime, established that Christian drove by in another vehicle and lied about being present at the scene of the accident earlier.
¶ 14. Based on the record before us, we find that the trial court did not err in overruling the motion for a new trial.

B. MOTION FOR A DIRECTED VERDICT OR, IN THE ALTERNATIVE, MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT.
¶ 15. Motions for a directed verdict and motions for a JNOV will be reviewed "under an abuse of discretion *1025 standard." Robinson v. State, 967 So.2d 695, 697(¶ 8) (Miss.Ct.App.2007) (citing Howell v. State, 860 So.2d 704, 764 (¶ 212) (Miss.2003)). Further, our supreme court has recently articulated that:
with regard to challenges based on the sufficiency of the evidence, ... "the critical inquiry is whether the evidence shows beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction."
Id. (quoting Dilworth v. State, 909 So.2d 731, 736(¶ 17) (Miss.2005)). A reviewing court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Dilworth, 909 So.2d at 736(¶ 17) (citation omitted). In summary, it is a challenge to the sufficiency of the evidence. Id.
¶ 16. Christian argues that the trial court erred in failing to grant his motion for a directed verdict at the conclusion of trial. The State argues that the evidence was sufficient to support the guilty verdict returned by the jury.
¶ 17. In this case, the two versions of the events leading up to and following the shooting differed greatly. Our supreme court has previously held that "when the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony." Scott v. State, 796 So.2d 959, 968(¶ 31) (Miss.2001) (quoting Gathright v. State, 380 So.2d 1276, 1278 (Miss. 1980)). Christian was charged with aggravated assault, the elements of which are: "attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm." Miss.Code Ann. § 97-3-7(2)(b) (Rev.2006). While Christian may have offered evidence and testimony tending to show that the shooting was accidental, the State clearly presented evidence demonstrating that the shooting amounted to aggravated assault. The State presented the 911 transcript which showed that Christian was the aggressor leading up to the shooting. The State also presented testimony showing that Roberts was injured by a gunshot wound to the head. From our review of the record before this Court, we cannot find that the circuit court erred in overruling the motion for a directed verdict or the motion for a JNOV.

III. WHETHER CUMULATIVE ERRORS RESULTED IN AN UNFAIR TRIAL.
¶ 18. Christian argues that the record reveals a concerted plan to eliminate his defense of accidental shooting. Christian argues that he did not receive the benefit of a fair and impartial trial. Specifically, Christian argues that the trial judge failed to be impartial when questioning its expert, Bowman, and ultimately excluding it from the trial. Christian also contends that Amanda, Christian's girlfriend, was listed as a witness for many months only to be subsequently indicted a few days before trial. Christian argues that this behavior prevented Amanda from testifying, thereby jeopardizing his defense. Christian contends the State indicted Amanda as an accessory after-the-fact in order to prevent her from testifying for the defense.
¶ 19. The State argues that there is nothing in the record to support the contention that Amanda was indicted in order to prevent her testimony at trial. The State also argues that Amanda was not served two or three days before trial with *1026 the indictment; but that the record reflects she was at large. The State points out that the record is completely void of any evidence of prosecutorial vindictiveness. The State additionally argues that Christian cites no legal authority for parts of his argument and that this assignment of error is without merit.
¶ 20. It must be noted that "[a] criminal defendant is not entitled to a perfect trial, only a fair trial." Sykes, 895 So.2d at 196(¶ 22) (quoting McGilberry v. State, 741 So.2d 894, 924 (¶ 126) (Miss. 1999)). In this case, Christian fails to sufficiently articulate the errors committed by the trial court that amount to cumulative error. As such, we find no merit to this assignment of error.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS WITH EIGHTEEN YEARS TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TWO YEARS OF POST-RELEASE SUPERVISION AND A $5,000 FINE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.